KEVIN WAGNER ET AL. *v.* CLARK EQUIPMENT
COMPANY, INC., ET AL.
(SC 16505)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued September 13, 2001—officially released January 29, 2002

*Wesley W. Horton*, with whom were *Kimberly A. Knox*, and, on the brief, *Karen L. Dowd*, *Daniel J. Krisch* and *Colleen A. Madden*, legal intern, for the appellants (defendants).

*Jacques J. Parenteau*, for the appellee (named plaintiff).

*Jeremy G. Zimmermann, Mary A. Wells*, pro hac vice, *L. Michael Brooks, Jr.*, pro hac vice, and *Hugh F. Young, Jr.*, pro hac vice, filed a brief for the Product Liability Advisory Council, Inc., as amicus curiae.

*Michael P. Koskoff, Antonio Ponvert III, Robert B. Adelman* and *Jeffrey Robert White*, pro hac vice, filed a brief for the Connecticut Trial Lawyers Association et al. as amicus curiae.

*Opinion*

ZARELLA, J. The plaintiff,[1] Kevin Wagner, brought this product liability action against the defendants, Clark Equipment Company, Inc. (Clark), and Summit Handling Systems, Inc., doing business as Clarklift of Connecticut (Summit), for injuries sustained when a forklift manufactured by Clark and distributed by Summit crushed the plaintiff's left foot. The jury returned a verdict in favor of the plaintiff in the amount of $3

---

[1] The plaintiff was joined in the original action by his ex-wife, Kim Wagner, who sought damages for loss of consortium. Subsequently, however, she withdrew her claim against the defendants and is no longer a party to this case. We refer to Kevin Wagner as the plaintiff throughout this opinion.

million, and the trial court, *Hurley, J.*, rendered judgment in accordance with the verdict. The defendants appealed from that judgment and, in an earlier decision, this court reversed the judgment of the trial court and remanded the case for a new trial. *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 201, 700 A.2d 38 (1997). On remand, the jury returned a verdict in favor of the plaintiff in the amount of $9,412,382.56, and the trial court, *Koletsky, J.*, rendered judgment in accordance with that verdict, from which the defendants appealed.[2]

The dispositive issue in this appeal is whether the trial court, *Koletsky, J.*, improperly limited the testimony of the defendants' expert witness to the subject matter specified in the expert witness disclosure filed after the first trial but before the second trial, on the basis of the trial court's determination that that disclosure superseded an earlier expert witness disclosure filed before the first trial. Additionally, the plaintiff urges us to consider, in the event that we order a new trial, whether the trial court improperly denied his request for leave to amend his complaint[3] and improperly excluded certain evidence because it was outside the scope of the allegations contained in the operative complaint. We conclude that the trial court improperly limited the testimony of the defendants' expert witness to the subject matter specified in the disclosure filed after the first trial but before the second trial.[4] We also conclude

[2] The defendants appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] The plaintiff raised this issue in a preliminary statement of issues filed with this court pursuant to Practice Book § 63-4 (a) (1), which provides in relevant part: "If any appellee wishes to . . . (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial . . . that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues. . . ."

[4] In light of our conclusion that the trial court's judgment must be reversed and the case remanded for a new trial, we do not reach the merits of the defendants' other claims, namely, that the trial court improperly: (1) failed

that the trial court, *Handy, J.,* improperly denied the plaintiff's request for leave to amend his complaint.[5] Accordingly, we reverse the judgment of the trial court.

The following relevant facts and procedural history are undisputed. The plaintiff was employed as a carpenter for the Electric Boat Division of General Dynamics Corporation (Electric Boat) in Groton. On October 25, 1989, the plaintiff was directing an overhead crane operator from the ground when a forklift backed up and struck him from behind, knocking him to the ground. The forklift ran over the plaintiff's left foot, causing serious injuries that eventually resulted in the amputation of the plaintiff's left leg below the knee.

The plaintiff brought this product liability action pursuant to General Statutes § 52-572m.[6] Specifically, the

to extend the requirements for the admissibility of expert scientific testimony set forth in *State* v. *Porter,* 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), to the nonscientific expert testimony offered by the plaintiff; (2) excluded the prior testimony of the plaintiff's ex-wife, an unavailable witness on the issue of mitigation of damages; and (3) recharged the jury in response to the jury's interrogatories on issues relating to liability by failing to include a definition of the term "unreasonably dangerous." In addition, we note that, with respect to the defendants' claim regarding the extension of *Porter* to nonscientific expert testimony, our review of the record discloses that the defendants did not clearly request that the trial court do so. Rather than address such a claim on this state of the record, therefore, we defer our resolution of that claim to a case in which the record squarely presents it.

[5] Because we conclude that the trial court improperly denied the plaintiff's request for leave to amend his complaint prior to the second trial, we do not reach the merits of the plaintiff's claim that the trial court improperly excluded certain evidence because it was outside the scope of the allegations contained in the operative complaint.

[6] General Statutes § 52-572m provides in relevant part: "(b) 'Product liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent

plaintiff alleged that the forklift "was defective and unreasonably dangerous" because it lacked, inter alia: (1) a mirror "on the right side of the [forklift] cab"; (2) a strobe light that "would have directed bright, blinking light directly at [the plaintiff]"; and (3) a back-up alarm that sounded "sufficiently distinct to warn [the plaintiff]." The jury returned a verdict in favor of the plaintiff. The defendants filed several posttrial motions, including a motion to set aside the verdict and for a new trial, and a motion to have judgment rendered in accordance with the defendants' motion for a directed verdict. The trial court denied all of the defendants' posttrial motions and rendered judgment in accordance with the jury's verdict. This appeal followed.

I

The defendants claim that the trial court improperly limited the testimony of their expert witness to the subject matter specified in their expert witness disclosure filed after the first trial but before the second trial. The defendants argue that this disclosure, which was preceded by an earlier expert witness disclosure filed before the first trial, did not displace the first disclosure, but, rather, *supplemented it*, and, therefore, their expert should have been allowed to testify concerning the subject matter contained in the first disclosure. The plaintiff, on the other hand, contends that the trial court properly limited the testimony of the defendants' expert to the subject matter contained in the second disclosure. We agree with the defendants.

The following additional facts are necessary to the disposition of the defendants' claim. In 1993, before the first trial, the defendants disclosed Walter Girardi as one of their expert witnesses. The defendants disclosed that Girardi was to testify on the issue of whether the

---

or innocent; misrepresentation or nondisclosure, whether negligent or innocent. . . ."

forklift involved in the plaintiff's accident was defectively designed.[7] In 1998, after this court reversed the first trial court's judgment and remanded the case for a new trial; *Wagner* v. *Clark Equipment Co.*, supra, 243 Conn. 201; but prior to the commencement of the new trial, the defendants again disclosed Girardi as an expert who they were expecting to call during the new trial. In their second disclosure, dated June 30, 1998, the defendants stated that Girardi would testify as to "safe and proper material handling practices in industrial settings [such as] . . . Electric Boat . . . ."[8] The second disclosure did not indicate whether it was supplementary to or in lieu of the first disclosure.

Subsequently, the plaintiff filed a motion in limine in which he stated, inter alia, that he expected that "Girardi [would] offer testimony consistent with the testimony at the [first] trial [at which he] . . . suggested [that] there was scientific, technical or specialized knowledge to support it." (Internal quotation marks omitted.) According to the plaintiff, it was questionable whether Girardi's testimony would comport with the rule on the admissibility of expert testimony established in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), which was decided after the first trial but before the commencement of the second trial. Additionally, the plaintiff stated in his motion in limine that he expected that the "defendants [would] attempt to offer expert [testimony] to deny [his] claim of defect and in support of their special defenses alleging that some other person or entity other than [the]

---

[7] Specifically, this first disclosure stated that Girardi was expected to testify that the forklift "was not defectively designed or manufactured, and . . . that it was not defective in any other way alleged by the plaintiff . . . ."

[8] More specifically, the defendants stated in their second disclosure that Girardi would testify that "the material handling practices used and followed at Electric Boat's Groton facility . . . at or near the time of [the plaintiff's] injury were neither safe nor proper."

defendants [is] liable for the injuries caused to [the] plaintiff." The trial court subsequently denied the plaintiff's motion in limine.

At the second trial, the defendants presented Girardi as an expert. When the defendants sought to question Girardi about the safety standards for forklifts, the plaintiff objected, claiming that the testimony was outside the scope' of the defendants' disclosure. The trial court allowed Girardi to testify as to the subject matter specified in the second disclosure, but refused to allow him to testify regarding the forklift's defective design, the subject matter on which Girardi was expected to testify according to the first disclosure. The trial court ruled that the first disclosure was superseded by the second disclosure.[9]

---

[9] During discussion of the plaintiff's objection to Girardi's testimony, the following colloquy took place:

"[Jacques J. Parenteau, the Plaintiff's Attorney]: This witness is disclosed, Your Honor, to testify as to the safe and proper material handling practices in industrial—

"The Court: Hold it.

"Mr. Parenteau: The subject matter which Mr. Girardi is expected to testify to—

"The Court: I understand. You want to object that the testimony is outside the disclosure

"Mr. Parenteau: Correct.

\* \* \*

"[E. Wayne Taff, the Defendants' Attorney]: I do want to tell the court the initial disclosure—the other disclosure was intended to supplement the initial disclosure.

"The Court: I don't think that's what it says.

"Mr. Taff: It may not, Your Honor. But I can tell you what was the intent, and the witness has been fully deposed, fully testified on various subject matters of product design and by [the plaintiff's attorney] in this matter. And I can tell you, Your Honor, that is the intent, perhaps not the language, but the intent of the later disclosure was . . . to make clear there would also be discussion of material handling practices.

\* \* \*

"The Court: . . . I'm not challenging your statement that [the second disclosure] was intended to . . . supplement the [first] disclosure. I am ruling, however, that it doesn't say so, and, therefore, is not fair notice of the defendant[s]. And you may not ask—well, I'm not going to do a global

Before reaching the defendants' claim, we briefly address the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Torres* v. *Waterbury*, 249 Conn. 110, 118–19, 733 A.2d 817 (1999)." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000). None of the parties to this appeal has challenged the factual findings of the trial court. Our task, therefore, is to decide whether, on the basis of those factual findings, the trial court's conclusions of law are legally and logically correct. E.g., *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 346, 736 A.2d 824 (1999).

Our resolution of the defendants' claim depends on whether a subsequent disclosure of an expert witness that contains no specification that it is intended to supplement a previous disclosure, serves to supplement or to supersede any previous disclosures. The disclosure of experts is governed by Practice Book §§ 13-4[10] and

---

ruling. . . . [M]y ruling is that you—that the witness not be permitted to testify outside the fair reading of the [second] disclosure."

[10] Practice Book § 13-4, formerly Practice Book, 1978–97, § 220, provides in relevant part: "(4) . . . [A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who

13-15.[11] Under Practice Book §§ 13-4 and 13-15, parties have a continuing duty to disclose information and, thus, they are required to supplement their disclosures with the names of any additional experts who are expected to testify and to designate any additional subject matter on which the experts are expected to testify. Pursuant to Practice Book § 13-4 (4), a court has the authority to preclude the testimony of an expert if, upon motion, the court determines that the late disclosure "will cause undue prejudice to the moving party . . . or . . . undue interference with the orderly progress of trial of the case . . . or [when the later disclosure] involves bad faith delay . . . by the disclosing party." Practice Book § 13-4 (4).

The trial court in the present case did not limit Girardi's testimony based on the existence of any of the factors enumerated in § 13-4 (4). Rather, the trial court concluded that the defendants' second disclosure effectively nullified the defendants' first disclosure, thereby limiting the subject matter of Girardi's testimony. The trial court based its conclusion of law upon the absence of any indication by the defendants that they intended the second disclosure to supplement the

---

is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

[11] Practice Book § 13-15, formerly Practice Book, 1978–97, § 232, provides: "If, subsequent to compliance with any request or order for discovery and prior to or during trial, a party discovers additional or new material or information previously requested and ordered subject to discovery or inspection or discovers that the prior compliance was totally or partially incorrect or, though correct when made, is no longer true and the circumstances are such that a failure to amend the compliance is in substance a knowing concealment, that party shall promptly notify the other party, or the other party's attorney, and file and serve in accordance with Sections 10-12 through 10-17 a supplemental or corrected compliance."

first disclosure. We disagree with the trial court's conclusion.

Pursuant to Practice Book § 13-15, parties are under a continuing duty to "file and serve in accordance with [Practice Book §§] 10-12 through 10-17 a supplemental or corrected compliance" upon the discovery of additional or new material or information. Nothing in the rules of practice, however, requires that this supplemental or corrected compliance be labeled clearly as such. Although we believe it is a more prudent course to notify the court and the other parties of the supplemental nature of a disclosure, we disagree with the trial court's conclusion that the absence of such notification effectively nullifies any prior disclosures.

The plaintiff contends that the parties were directed, pursuant to a scheduling order issued on January 6, 1998, to redisclose all expert witnesses expected to testify at the second trial. We disagree with this characterization, however, because the scheduling order did not contain any language indicating any such mandate. Furthermore, to the extent that the scheduling order at issue contains words such as "update" and "clarify" to describe more fully the actions to be taken by the prescribed dates, it suggests the opposite.

The plaintiff's claim that the trial court properly limited Girardi's testimony to the subject matter specified in the second disclosure because the plaintiff had not been given fair notice is equally unavailing. The plaintiff argues that, because he understood that the defendants' second disclosure was the only operative disclosure, he believed that Girardi would not be testifying on the subject of design defect. Thus, the plaintiff argues, he would have been unfairly surprised at the second trial had the trial court allowed the defendants to elicit testimony from Girardi regarding design defect. The plaintiff, therefore, asserts that the proper standard of review

on appeal is abuse of discretion. We conclude, however, that, even under this more stringent standard of review, the trial court reasonably could not have found that the plaintiff would have been unfairly surprised by Girardi's testimony concerning the subject matter specified in the first disclosure, namely, design defect.

Although Practice Book § 13-4 (4) provides that an expert shall not testify if the court determines that a late disclosure will cause undue prejudice, the disclosure at issue was not late. Furthermore, the plaintiff stated in his motion in limine, which was filed prior to the second trial, but after the defendants filed their second disclosure, that "[i]t is expected that [the] defendants will attempt to offer expert evidence to deny [the] plaintiff's claim of defect . . . ." The plaintiff's assertion, therefore, that Girardi's testimony concerning design defect would have caused him undue prejudice or that he had not been given fair notice of the subject matter contained in the first disclosure is not supported by the record. To the contrary, the defendants, not the plaintiff, suffered prejudice by virtue of the trial court's decision to preclude the defendants from eliciting testimony on the issue of design defect from the only expert witness that the defendants called for that purpose. Accordingly, we hold that the trial court improperly concluded that the June 30, 1998, or second, disclosure failed to give "fair notice" to the plaintiff regarding the full extent of Girardi's testimony.

## II

On the basis of our conclusion in part I of this opinion, we reverse the judgment of the trial court and remand the case for a new trial. Consequently, we turn to the plaintiff's claim that the trial court, *Handy, J.*, improperly denied the plaintiff's request for leave to amend his complaint following the first trial. See footnote 3 of this opinion and accompanying text. Specifically, the

plaintiff claims that he should have been permitted to amend his complaint because the requested amendments did not allege a new cause of action, but merely amplified the operative pleadings and, therefore, were not time barred. We conclude that the trial court abused its discretion in denying the plaintiff's request for leave to amend following the first trial.

The following additional facts are necessary to our resolution of this issue. The original complaint in this case was filed in 1991. On August 21, 1995, the plaintiff filed an amended complaint.[12] On December 5, 1995, in the course of the first trial, the plaintiff filed a motion for leave to amend his complaint. The requested amendment pertained to the issue of whether the forklift was defective because its back-up alarm did not sound continuously when the shifting lever was in the reverse position. The plaintiff claims that his request for leave to amend was made in response to the unexpected cross-examination testimony of Robert M. Sarette, the operator of the forklift, during the first trial. Sarette testified that the back-up alarm might not have been sounding continuously prior to impact with the plaintiff. The plaintiff alleges that this was unexpected testimony because, in a statement signed by Sarette on the day of the accident, Sarette stated that "[a]t the time of the accident, [he] was moving at a slow rate of speed and [the back-up] alarm was operational." The trial court, *Hurley, J.*, denied the plaintiff's request for leave to amend.[13]

On October 16, 1997, after the first trial but before the second trial, the plaintiff filed another request for leave to amend his complaint. The plaintiff sought to

---

[12] Hereinafter, we refer to the plaintiff's amended complaint of August 21, 1995, which is the operative complaint for purposes of our analysis, as the "complaint."

[13] On appeal, the plaintiff does not claim that the trial court, *Hurley, J.*, abused its discretion in denying this request for leave to amend his complaint.

amend his complaint by adding a paragraph alleging a breach of an implied warranty of fitness for a particular purpose and two paragraphs containing allegations concerning the back-up alarm on the forklift.[14] The defendants filed an objection to the plaintiff's October 16, 1997 request to amend on November 4, 1997, pursuant to what is now Practice Book § 10-60 (a).[15] The trial court, *Handy, J.,* sustained the defendants' objection to the plaintiff's request for leave to amend, concluding that the claims that formed the basis of the request for leave to amend were "barred by the applicable statute of limitations and further barred by prior rulings in this case which constitute the law of the case . . . ."[16]

[14] The plaintiff sought to amend his complaint by adding the following paragraphs:

"r. . . . Summit breached the implied warranty of fitness for a particular purpose.

"s. The forklift was defective and unreasonably dangerous because it was assembled by Summit . . . such that the [back-up] alarm would stop sounding when the gear lever was in reverse while the clutch brake pedal was depressed.

"t. The forklift was defective and unreasonably dangerous because it was assembled by Summit . . . such that the [back-up] alarm was deactivated by disengaging the transmission when the shifting lever was in reverse."

[15] Practice Book § 10-60 (a) provides in relevant part: "[A] party may amend his or her pleadings . . . in the following manner . . .

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended . . . . If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party . . . be filed . . . within the time specified above and placed upon the next short calendar list."

[16] Furthermore, the trial court, *Handy, J.,* concluded that it would not overrule the defendants' objection to the plaintiff's request for leave to amend even though the defendants' objection had not been filed within fifteen days of the plaintiff's request for leave to amend; see Practice Book § 10-60 (a); because to do so would "elevate form over substance . . . ."

On August 27, 1998, the plaintiff filed another request for leave to amend his complaint. The plaintiff's proposed amendments were identical to those proposed in the plaintiff's October 16, 1997 request for leave to amend.[17] On August 31, 1998, the defendants filed an objection to the plaintiff's latest request and the trial court, *Koletsky, J.*, sustained the objection.

Our standard of review of the plaintiff's claim is well settled. "While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano*, 144 Conn. 582, 587, 136 A.2d 341 [1957]; this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings* v. *General Motors Corporation*, 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. *Freccia* v. *Martin*, 163 Conn. 160, 164, 302 A.2d 280 (1972). *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 302–303, 460 A.2d 488 (1983). Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. *Falby* v. *Zarembski*, 221 Conn. 14, 24, 602 A.2d 1 (1992). It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion. *Kelley* v. *Bonney*, 221 Conn. 549, 591, 606 A.2d 693 (1992)." (Internal quotation marks omitted.) *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 766–67, 607 A.2d 410 (1992).

We focus our attention upon the plaintiff's second attempt to revise his complaint on October 16, 1997,

---

[17] See footnote 14 of this opinion.

which was denied by the trial court, *Handy, J.*[18] The court determined, inter alia, that the claims that formed the basis for the plaintiff's request for leave to amend were barred by the applicable statute of limitations. The plaintiff argues that the claims that formed the basis of his request for leave to amend arise out of the same cause of action as that alleged in the complaint and, therefore, those claims are not barred by the applicable statute of limitations.

It is true that a party properly may "amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same." (Internal quotation marks omitted.) *Bielaska* v. *Waterford*, 196 Conn. 151, 154, 491 A.2d 1071 (1985). If a new cause of action is alleged in an amended complaint, however, it will "[speak] as of the date when it was filed." *Keenan* v. *Yale New Haven Hospital*, 167 Conn. 284, 285, 355 A.2d 253 (1974). "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action. . . . A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in

---

[18] The plaintiff also claims that the trial court, *Koletsky, J.*, abused its discretion in sustaining the defendants' objection to the plaintiff's August 27, 1998 request for leave to amend his complaint. Because we conclude that the trial court, *Handy, J.*, abused its discretion in sustaining the defendants' objection to the plaintiff's October 16, 1997 request for leave to amend his complaint, we do not address this claim.

support of a cause of action, provided the identity of the cause of action remains substantially the same, but whe[n] an entirely new and different factual situation is presented, a new and different cause of action is stated." (Citations omitted; internal quotation marks omitted.) *Sharp* v. *Mitchell*, 209 Conn. 59, 71–72, 546 A.2d 846 (1988).

In the present case, the plaintiff challenges the ruling of the trial court only as to the addition of paragraphs "s" and "t" to his complaint.[19] We, therefore, do not address the propriety of adding paragraph "r."[20] The allegations found in proposed paragraphs "s" and "t," which pertain to the issue of design defect with respect to the back-up alarm, arise out of the same set of facts set forth in the complaint, namely, an injury caused by a defective forklift. Consequently, paragraphs "s" and "t" contain allegations that arise from the same cause of action stated in the complaint, and, thus, the proposed amendments in paragraphs "s" and "t" are not barred by the statute of limitations.

The trial court, *Handy, J.*, also relied on the law of the case to sustain the defendants' objection to the plaintiff's October 16, 1997 request to amend. The defendants argue that the law of the case doctrine[21] bound the court to the earlier ruling in which the trial court, *Hurley, J.*, had refused to grant the plaintiff's request for leave to amend. This claim is without merit. "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and

[19] See footnote 14 of this opinion.

[20] See footnote 14 of this opinion.

[21] The law of the case doctrine provides that when "a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982).

if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted; internal quotation marks omitted.) *Breen* v. *Phelps*, 186 Conn. 86, 98–99, 439 A.2d 1066 (1982).

Moreover, because the circumstances surrounding the plaintiff's first request for leave to amend were very different from those surrounding the plaintiff's October 16, 1997 request for leave to amend, the court properly could have deviated from the earlier decision. The plaintiff's first attempt to amend his complaint had been made *during* the course of the first trial, whereas the second attempt was made after the first trial and nearly two years *prior to* the second trial. Thus, in light of this change in circumstances, the court properly should have considered the plaintiff's request for leave to amend.

The judgment is reversed and the case is remanded with direction to grant the plaintiff's request for leave to amend his complaint and for a new trial.

In this opinion the other justices concurred.