MARINA LUSSIER *v.* ROBERTA SPINNATO ET AL.
(AC 21372)

Schaller, Dranginis and Daly, Js.

Argued November 26, 2001—officially released April 9, 2002

*Richard M. Franchi,* for the appellant (plaintiff).

*Walter C. Bansley,* for the appellees (defendants).

DRANGINIS, J. The plaintiff, Marina Lussier, appeals from the judgment of the trial court denying her motion to vacate an arbitration award in favor of the defendants.[1] The plaintiff raises seven issues on appeal.[2] We, however, discern only four distinct claims: Whether (1) the court improperly found that two separate agreements constituted the parties' contract; (2) the

---

[1] The defendants are Roberta Spinnato and Peter Ranciato, doing business as Statewide Renovations.

[2] The plaintiff's statement of the issues is as follows:

(1) "Did the court err by improperly rewriting both of the contracts of the parties to make unenforceable contracts valid and to include arbitration in a contract where there was no such agreement by the parties?"

(2) "Did the court err by ignoring the provisions of its own rewritten contract in order to avoid vacating the arbitration?"

(3) "Did the court err by refusing to vacate the arbitration award in that the arbitrator prejudiced the rights of [the plaintiff] by refusing to make a factual determination in accordance with the Home Improvement Act and the Home Solicitation [Sales] Act?"

(4) "Did the court err by refusing to vacate the arbitration award in that there was evident partiality on the part of the arbitrator in that the award was against all evidence not in dispute which showed that the contracts were unenforceable and that no award could be made under the Home Improvement Act?"

(5) "Did the court err by refusing to vacate the arbitration award in that the arbitrator exceeded its power and/or so imperfectly executed [it] that a mutual, final and definite award upon the subject matter was not made in accordance with the laws of the state of Connecticut?"

(6) "Did the court err by refusing to vacate the award of the arbitrator in that it was against public policy to award damages under a contract which violates the Home Improvement Act and the Home Solicitation [Sales] Act and gives rise to criminal and civil penalties pursuant to [General Statutes §] 42-141?"

(7) "Did the court err by not allowing a hearing before it on the issue of whether the contracts were subject to arbitration thereby depriving the plaintiff of her constitutional due process rights?"

parties' agreement provided for arbitration of disputes arising under the contract; (3) the agreement between the parties complied with the Home Improvement Act (act), General Statutes § 20-418 et seq.; and (4) the court improperly denied the plaintiff a hearing on the issue of arbitrability. We affirm the judgment of the trial court.

The following facts are necessary for our resolution of these claims. In 1994, the plaintiff's single-family home was almost completely destroyed by fire. The plaintiff entered into a contract with the defendants to rebuild and renovate the existing structure into a two-family dwelling. The defendants began work on the premises sometime after September 22, 1994, and were paid $161,000 by the plaintiff's insurance company, but had performed work worth $215,000. The plaintiff failed to make a scheduled payment, and the defendants left the work site in July, 1995. The plaintiff hired another contractor to complete the project and to repair allegedly faulty work performed by the defendants.

In March, 1999, the plaintiff filed a demand for arbitration with the American Arbitration Association. The demand was filed pursuant to a written agreement between the parties dated September 8 and 22, 1994. The plaintiff alleged that the defendants breached the contract by failing to complete the work, that they failed to perform work in a workmanlike manner and that the contract was invalid under the act.

In May, 1999, the plaintiff instituted this civil action. The plaintiff filed a motion to stay the arbitration and filed an amended complaint alleging claims similar to those raised at arbitration and added a claim for a judgment declaring that the contract was null and void because it did not comply with the act. The stay was denied, and the arbitration went forward.

After a full hearing in which neither party objected to arbitration, the arbitrator found in favor of the defen-

dants and awarded damages in the amount of $44,000, plus administrative fees. The plaintiff subsequently filed a motion for summary judgment on the declaratory judgment count, which was denied. The court found the contract valid and enforceable and not in violation of the act and, therefore, found the plaintiff's motion for summary judgment moot. The defendants' motion to confirm the award was granted and the plaintiff's motion to vacate was denied. This appeal followed. Additional facts and history will be set forth as necessary to resolve the issues on appeal.

I

The first issues raised on appeal concern whether the court properly found that the agreements dated September 8 and 22, 1994, constitute a contract that did not violate the act and contained an agreement to arbitrate. The plaintiff claims that the court improperly "rewrote" the agreement between the parties. We are not persuaded.

The following additional facts are necessary for our resolution of this issue. The September 8 document is a three page document entitled, "Multi-Services Contract." It provides that the defendants were to board up the plaintiff's premises, to make temporary repairs of utilities, to estimate and replace lost landscaping, and to make "[r]epairs of/or reconstruction of building(s) . . . specifications will follow based upon agreement with owner(s)." The contract also provides for the payment of the defendants through the plaintiff's insurance carrier. The third page is a "notice of cancellation," signed by the plaintiff and dated September 8. The September 22 document consists of eighteen pages that contain a schedule for payments totaling $234,000 as work is completed. It is signed and dated by both parties and contains a detailed list of work to be done and materials to be used.

The court, in its memorandum of decision, stated: "The plaintiff claims, disingenuously, that the contract omits many of the requirements of [General Statutes] § 20-429 (a). The contract here consists of more than one document. When the plaintiff suffered a fire at her residence, she signed a 'multi-services contract' dated [September 8, 1994] with the defendant to board up the premises, do certain temporary repairs to secure the building, and do the following: 'Repairs of/or reconstruction of building(s) at above address—work specifications will follow based upon agreement with owner(s).' On the same day, the proper copies and notice of right to cancel were delivered to her. Within days thereafter, the parties agreed on the scope and price of the remaining work and signed an additional construction agreement that included a detailed list of the work to be performed and new components to be added to the structure. The two documents must be read together as the contract into which the parties entered. Together they contain all of the requirements for a valid home improvement contract and, of course, they contain a valid arbitration clause."

"The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . Because the . . . claim involves a finding of fact, we must adhere to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review." (Citation omitted; internal quotation marks omitted.) *Cheverie* v. *Ashcraft & Gerel*, 65 Conn. App. 425, 439–40, 783 A.2d 474, cert. denied, 258 Conn. 932, 785 A.2d 228 (2001).

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Noble* v. *White*, 66 Conn. App. 54, 60, 783 A.2d 1145 (2001).

"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. . . . When parties execute a contract that clearly refers to another document, there is an intent to make the terms and conditions of the other document a part of their agreement, as long as both parties are aware of the terms and conditions of the second document." (Citation omitted; internal quotation marks omitted.) *Morales* v. *Pentec, Inc.*, 57 Conn. App. 419, 438, 749 A.2d 47 (2000).

The plaintiff claims that the court should not have found an operable agreement between the parties because the plaintiff canceled the contract. The plaintiff argues that cancellation was effectuated by her signature on the "notice of cancellation" dated September 8. We agree with the court's assessment that this argument is disingenuous.

The "notice of cancellation" provides that the plaintiff "may cancel this transaction without any penalty or obligation, within three business days from the above date [September 8, 1994]." It further provides that "[t]o cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram to: Statewide Renovations

. . . no later than midnight of [September 13, 1994]." The record reveals that the plaintiff signed this notice the same day she entered into the September 8 contract. While it is not inconceivable that the plaintiff would enter into a contract and cancel it on the same day, only later to enter into a second contract with the defendants on September 22, the record supports the conclusion that the plaintiff did not furnish notice of cancellation to the defendants on September 8, 1994. Rather, the plaintiff's signature appears to be an acknowledgement of her right to cancel the contract, and the agreement dated September 22 was an addendum to the September 8 agreement. The plaintiff herself, demanded arbitration based on both agreements and, in her appellate brief, noted that the September 8, 1994 agreement "was amended by another agreement . . . signed . . . on September 22, 1994 . . . ." We, therefore, cannot say that the court's conclusion that the September 8 and 22 agreements constituted a contract was clearly erroneous.

We also conclude that the court properly found that the contract provided for arbitration of disputes arising under the parties' agreement.[3] "[A]rbitration is a creature of contract and there must be an express agreement to arbitrate in order for the arbitrators to have authority and the court to have jurisdiction." *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, 39 Conn. App. 444, 449–50, 664 A.2d 819 (1995). "Arbitration . . . is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law." (Internal quotation marks omitted.) *Spicer* v. *Spicer*, 33 Conn. App. 152, 159, 634 A.2d 902 (1993), cert. denied, 228 Conn. 920, 636 A.2d 850 (1994). "[A] person can be

---

[3] The plaintiff also argues that even if the arbitration clause was part of the parties' contract, her claim that the contract was unenforceable is not encompassed by the arbitration clause. We find this claim to be entirely without merit.

compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed to do so. . . . No one can be forced to arbitrate a contract dispute who has not previously agreed to do so." (Internal quotation marks omitted.) *Green* v. *Connecticut Disposal Service, Inc.*, 62 Conn. App. 83, 86–87, 771 A.2d 137, cert. denied, 256 Conn. 912, 772 A.2d 1124 (2001). Therefore, "[t]he authority for arbitration must be derived from the agreement of the parties . . . and the relevant provisions of applicable statutory directives . . . ." (Citations omitted; internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 194, 680 A.2d 1243 (1996); see General Statutes § 52-408 et seq.

"Whether a particular dispute is arbitrable is a question for the court . . . . The manifestation of arbitrability may be by express provision to that effect or the use of broad terms . . . and courts must look to the plain language of the contract and construe the contract as a whole when determining the intent of the parties." (Citation omitted; internal quotation marks omitted.) *Carlin Pozzi Architects, P.C.* v. *Bethel*, 62 Conn. App. 483, 488–89, 767 A.2d 1272 (2001).

In this case, paragraph twenty-two of the September 22, 1994 document provides: "ARBITRATION: Any controversy or claim arising out of or relating to this AGREEMENT, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction." We further note that the *plaintiff* initiated arbitration proceedings and did not object to arbitration until a judgment was awarded in favor of the defendants. The plaintiff's assent to arbitration is clearly demonstrated by her conduct. See *Sawmill Brook Racing Assn., Inc.* v. *Boston Realty Advisors, Inc.*, supra, 39 Conn. App. 451–52 (signature of party not necessary on contract where

that party initiated and proceeded with arbitration). Because the court properly concluded that the parties' agreement encompassed both the September 8 and 22 documents, that the arbitration clause was unambiguous and that the plaintiff initiated arbitration, we conclude that the court's finding that the parties had an agreement to submit disputes arising under the contract to arbitration was not clearly erroneous.

We must next consider whether the court properly concluded that the operable agreement complied with the Home Improvement Act and with the Home Solicitation Sales Act, General Statutes § 42-134a et seq., which is incorporated in the Home Improvement Act. The plaintiff argues that the court improperly found that the parties' contract satisfied the requirements of § 20-429 (a)[4] and, therefore, the defendants could not recover. We disagree.[5]

"To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation

---

[4] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[5] The plaintiff also claims that the arbitrator's award violated public policy. She contends that because the parties' contract violates the act and noncompliance with the act gives rise to criminal penalties, the award was against public policy. Because we conclude that the contract did not violate the act, we need not address this claim.

marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002).

In this case, the plaintiff claims that neither the September 8, 1994 document nor the September 22, 1994 document contains (1) a start or finish date, (2) the entire agreement between the owner and contractor or (3) a price, as required by § 20-429 (a). The plaintiff additionally argues that the September 22, 1994 document does not contain a notice of cancellation as required by the act. The court found that each of the requirements under the act was satisfied by either the September 8 or 22 document. These factual findings are supported by the record and, therefore, are not clearly erroneous. The court further found that the contract was comprised of both documents. While each document standing alone would not satisfy the statute, because the contract in this case consists of both the September 8 and 22 documents, the court properly concluded, as a matter of law, that the contract satisfied § 20-429 (a).

II

The plaintiff's last claim is that she was deprived of her constitutional due process rights because the court failed to hold a de novo evidentiary hearing on the issue of whether the September 8 and 22 contracts were subject to arbitration. In support of her argument that she is entitled to a de novo hearing, the plaintiff cites *Welch Group, Inc.* v. *Creative Drywall, Inc.*, 215 Conn. 464, 576 A.2d 153 (1990), which stands for the proposition that "arbitrability, absent the parties' clear agreement to the contrary, is a factual question to be determined by the trial court." Id., 465. We reject the plaintiff's claim.

First, we note that the plaintiff did not file a request for a de novo hearing in the trial court. See Practice Book § 23-66 (c). Second, the record indicates that the

146

plaintiff was heard on the matter of arbitrability, and the court determined that the parties agreed to arbitration. Although no transcripts were filed in this case to indicate the extent of argument in the trial court,[6] the judgment provides in relevant part that "the parties *appeared and were fully heard* on [the cross motions to vacate and confirm the award of the arbitrator]. The court, *having heard the parties*, denies the [motion] of the plaintiff to vacate the arbitration award and grants the [motion] of the defendants to confirm said award, and finds that the award should be accepted and confirmed." (Emphasis added.) We, therefore, conclude that this claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The appellant has the burden of providing this court with an adequate record for review. Practice Book § 60-5; see 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60, p. 386.