STATE OF CONNECTICUT *v.* SUSAN PEZZUTI
(AC 21380)

Foti, Dranginis and McDonald, Js.

Argued March 19—officially released July 9, 2002

*Conrad Ost Seifert*, special public defender, for the appellant (defendant).

*Melissa L. Streeto*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John Davenport*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Susan Pezzuti, appeals from the judgment of conviction, rendered after a trial to the court, of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2).[1] On appeal, the defendant claims that the trial court improperly (1) found that an $8000 loan to the defendant constituted embezzlement (2) found that a $3500 check payable to a third party evidenced the defendant's wrongful taking of $3500 and (3) failed to suppress testimonial evidence of a third party and a check payable to her, thereby depriving the defendant of her sixth amendment right to confront the witnesses against her and to present a defense. We affirm the judgment of the trial court.

The court found the following facts. The defendant was hired in 1989 by the board of directors for the Wolcott Organization of Retarded Citizens (Wolcott Organization), a now defunct nonprofit organization dedicated to assisting the mentally handicapped through various programs, including work placements, daily living workshops and residential care. As executive director of the Wolcott Organization from 1989

[1] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

until her termination in 1997, the defendant was the organization's highest ranking employee and was in charge of virtually all business operations. She had authority and control over the day-to-day management, financial planning, all assets and funding, payroll, accounts payable, the hiring and firing of employees and all other administrative functions.

During the defendant's tenure, the Wolcott Organization grew from an organization having approximately ten clients to one having fifty-five clients. A significant portion of the Wolcott Organization's funding came from contracts with the Connecticut department of mental retardation (department) based on approved operational plans and financial reporting.[2] As the Wolcott Organization expanded, it began to have financial difficulties. In 1997, the department became aware of those difficulties and recommended that the organization seek financial and managerial assistance.

The Wolcott Organization accepted multiple loans from other agencies and individuals, including Wolcott Organization employees, and the defendant's friends and family. The defendant as well made "loans" to the organization in order to meet monthly expenses, including the payroll. When auditors suggested that the defendant's loans to the Wolcott Organization had the appearance of impropriety, she arranged to have the loans effected through Wolcott Organization employees acting as strawmen. The bookkeeping in general and for these various loan transactions, including their repayment if any, was substandard at best; they were improperly recorded, not recorded at all and even lost. Bookkeepers and accountants increasingly relied on the defendant, as the sole individual with check writing authority, to explain the records or lack thereof. The

---

[2] Other revenues came from fundraisers, donations and a bakery operated by the Wolcott Organization.

Wolcott Organization was financially mismanaged and accumulated significant tax debt.

Webster Bank, which maintained the Wolcott Organization's checking account, ceased honoring checks endorsed by or payable to the defendant unless they were signed by her in her official capacity after it noticed the defendant's practice of writing checks for which there were insufficient funds in the organization's account. As a result, the defendant again used Wolcott Organization employees to cash checks and to deliver the proceeds to her as repayment for her loans.

Finally, in 1997, despite the inadequate record keeping, a bookkeeper found and reported discrepancies between loan repayments and amounts due on those loans to a Wolcott Organization board member. Shortly thereafter, the defendant was terminated. At approximately the same time, the department ceased funding the Wolcott Organization and the organization ceased operations.

The state charged the defendant with two counts of larceny. In the first count, the state charged that the defendant committed larceny in the first degree in violation of § 53a-122 (a) (2) by wrongfully appropriating to herself or another, the property of another in her care, namely the Wolcott Organization, consisting of money the value of which exceeded $10,000. In the second count, the state alleged that she committed larceny in the first degree in violation of § 53a-122 (a) (4) by certifying and attesting to a claim for reimbursement from the department of mental retardation that she knew to be false, in an amount exceeding $2000. The court found the defendant guilty of the first count and acquitted her of the second. The court sentenced the defendant to five years incarceration, execution suspended after one year, and five years probation and ordered her to make restitution for funds totaling

$18,725.[3] This appeal followed. Additional facts will be set forth as necessary to address the defendant's claims on appeal.

I

The defendant's first claim is that the court improperly concluded that she embezzled an $8000 loan and a $3500 check from the Wolcott Organization. Specifically, she argues that it was "totally impossible" for the trial court to conclude that she embezzled the $8000 from the Wolcott Organization because it is undisputed that the loan was made to her rather than to the Wolcott Organization. With respect to the $3500, she argues that the court reasonably could not have concluded that the check transaction constituted embezzlement. We disagree.

The defendant maintains that these claims are not sufficiency of the evidence claims. We must consider, however, whether the evidence was sufficient to satisfy the elements of the statute to determine whether the court's legal conclusion was correct.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which

---

[3] Pursuant to General Statutes § 53a-121 (b), the court aggregated the amounts that were the subject of the larceny.

establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 5, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002). "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the [trier of fact], and, therefore, we must afford those determinations great deference." *State* v. *Conde*, 67 Conn. App. 474, 490, 787 A.2d 571 (2001), cert. denied, 259 Conn. 927, 793 A.2d 251 (2002). "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 122, 788 A.2d 83 (2002).

## A

The following additional facts were found by the court and are not in dispute. Joseph Diaz, in an effort to provide meaningful assistance to the Wolcott Organization, began performing various duties for the Wolcott Organization in 1996 and 1997, such as fundraising, delivering goods and cleaning floors. He also offered financial assistance, including a $600 donation and $6000 loan. Diaz made a third loan of $8000 on May 6, 1997. At that time, the defendant told Diaz that the Wolcott Organization did not have sufficient funds to make payroll, that she wrote her own personal check to cover the expense, but that she also did not have sufficient funds. The defendant gave Diaz a bank account number for an account in which he was to deposit the $8000 that he had offered. He delivered a certified bank check from his credit union to the First Union bank. Upon making the deposit, he discovered

that the account was the defendant's personal account. Diaz testified that in retrospect it was odd that the deposit was made to the defendant's personal account, but he had trusted her and did not question it. He further testified that it was his intent to give the Wolcott Organization, not the defendant, a loan. The Wolcott Organization, however, never received the $8000 from the defendant,[4] and it paid Diaz $8000 in October, 1998.

On appeal, the defendant argues that the court could not have concluded that the $8000 loan constitutes embezzlement because Diaz voluntarily placed the funds in the *defendant's* personal account and the Wolcott Organization never possessed the funds. Therefore, the defendant could not have wrongfully taken or misappropriated the "property of another." The defendant argues that the facts could not support the court's conclusion that she committed embezzlement as defined by General Statutes § 53a-119 (1). We do not agree.

Section 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ." Section 53a-119 provides in relevant part: "A person commits larceny when, with the intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes . . . (1) Embezzlement. A person commits embezzlement when he wrongfully

---

[4] On May 6, 1997, the defendant wrote out a personal check, from her First Union account, to be deposited in the Wolcott Organization's account. The check was for $6220, the deposit slip indicated that $6000 was for "Joe D. loan" and the defendant testified that the remainder was miscellaneous Wolcott Organization revenue. The defendant claims that $2000 of Diaz's money remained in her account as repayment for a personal loan she had made to the Wolcott Organization. The defendant's bank refused to honor the check due to insufficient funds. Thus, the Wolcott Organization never received any portion of the $8000 loaned by Diaz.

appropriates to himself or to another property of another in his care or custody. . . ." "The crime of embezzlement is consummated where . . . the defendant, by virtue of his agency or other confidential relationship, has been entrusted with the property of another and wrongfully converts it to his own use. *State* v. *Lizzi*, 199 Conn. 462, 467, 508 A.2d 16 (1986); see *State* v. *Harris*, 147 Conn. 589, 592, 164 A.2d 399 (1960); *State* v. *Serkau*, 128 Conn. 153, 157–58, 20 A.2d 725 (1941); see also W. LaFave & A. Scott, Criminal Law (1972) § 89, pp. 649–50; 26 Am. Jur. 2d 362, Embezzlement § 6 (1996)." (Internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 18, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

We conclude that the evidence was sufficient for the court to conclude that the defendant embezzled from the Wolcott Organization the $8000 loan. Viewing the evidence in the light most favorable to sustaining the judgment, the court reasonably could have found that the defendant solicited the loan from Diaz in her capacity as executive director of the Wolcott Organization and on behalf of the Wolcott Organization. The court reasonably credited Diaz's testimony that he had given $8000 to the defendant as a loan to the Wolcott Organization. He further testified that he placed the funds in the defendant's account as she directed and that he contacted the defendant at the Wolcott Organization repeatedly for repayment, but the defendant told him that the funds were not available or that difficulties with the bookkeeper were causing the delay. The defendant testified that she had given the Wolcott Organization a personal check for $6000 and kept $2000 for herself as payment for a loan she had made to the Wolcott Organization. The evidence showed that her first check was not honored due to insufficient funds. It was reasonable for the court not to have credited the defendant's testimony that she gave the Wolcott Organization

a second check for $6000 or that she took the remaining $2000 as a loan repayment. "It is not the role of this court to make factual determinations and conclusions. It is the sole province of the trier of fact to evaluate [such] testimony, to assess its credibility, and to assign it a proper weight. . . . We can only review such conclusions to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Menzies*, 26 Conn. App. 674, 691, 603 A.2d 419, cert. denied, 221 Conn. 924, 608 A.2d 690 (1992).

The fact that the money was deposited directly into the defendant's account and that the Wolcott Organization at no time possessed it is of no moment. The defendant, as the executive director of the Wolcott Organization and the person with authority over financial matters, specifically loan solicitation and check writing, was entrusted with $8000, a loan intended for the Wolcott Organization, which she converted to her own use. Moreover, the defendant's own testimony contradicts her claim on appeal that the only conclusion that may be drawn from the evidence is that the Diaz loan was a personal loan to her. We conclude that the evidence was sufficient for the court to conclude that the defendant wrongfully appropriated to herself money loaned from Diaz to the Wolcott Organization.

B

The defendant next claims that the court improperly found that she embezzled the moneys from the Wolcott Organization by cashing a check made in the amount of $3500 through a third party and because the state failed to prove beyond a reasonable doubt that she intended to appropriate the $3500 wrongfully. We disagree.

The following additional facts apply to our resolution of this claim. The court found that the defendant solicited Richard Kish for loans for the Wolcott Organization. During 1995 and 1996, he made several loans amounting to "hundreds of dollars." He testified, however, and the court credited his testimony, that he had been repaid for all of his loans and he made no additional loans to the Wolcott Organization and did not receive any payments from the Wolcott Organization during 1997.

The evidence showed that, on May 9, 1997, the defendant wrote a check from the Wolcott Organization for $3500 made payable to Holly Nastri, an office receptionist at the Wolcott Organization. Nastri cashed the check and delivered the funds to the defendant upon her request. On the memo portion of the check, a notation provided: "Loan repay from s/s." Nastri and the defendant testified that they had delivered the funds to Kish that same day as repayment for a loan. The court found Kish's testimony credible and discredited the testimony of Nastri and the defendant. The court further found that there was no evidence to support the defendant's explanation of this check as a loan payment. There was no evidence connecting Kish or a loan from Kish to the check.[5]

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mis-

---

[5] The defendant maintains that she writes her fives like the letter "s" and that the notation actually indicated May 5. Her assertion does not change our analysis, however, as the evidence in the record supports the court's conclusion that the check was unrelated to Kish and we are not left with a firm conviction otherwise.

take has been committed." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 141, 794 A.2d 1008 (2002). We conclude that the testimony of Kish supports the conclusion that he did not loan the Wolcott Organization $3500 in 1997 or at any other time, nor did he receive payment from the Wolcott Organization in that amount.

The defendant argues that the court's finding of wrongful appropriation was clearly erroneous in light of the testimony by Frank Melvin and accounting records that "proved" that the Wolcott Organization owed the defendant $3500.[6] The defendant apparently concedes that "hypothetically" a defendant may still be guilty of embezzlement even when the victim owes the defendant money, but argues that the court's conclusion is improper because no evidence supports the conclusion that the defendant took the $3500, as it was not proved that it was deposited into the defendant's personal account. The defendant offers no legal support for this argument and we know of none. We therefore reject it.

The defendant further argues that it was not reasonable for the court to infer that the moneys were misappropriated by the defendant in light of the fact that she made numerous loans to the Wolcott Organization, she was owed $3500 by the Wolcott Organization, the Wolcott Organization's accounting records were in disarray, an inaccurate audit had been performed and she made "heroic efforts to keep the [Wolcott Organization's] doors open and to keep [the Wolcott Organization] functioning." The defendant's argument suggests that we should reconsider the evidence and reach a different conclusion from the court's. This we cannot do. The evidence supports, if not compels, the court's conclusion that the defendant engaged in a scheme or course

---

[6] Melvin performed bookkeeping services for the Wolcott Organization in 1996 and 1997 as an independent contractor.

of conduct to deprive the Wolcott Organization of moneys that were placed in her care and custody. We cannot say, on the basis of the entire evidence, that we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id.

## II

The defendant next claims that the court improperly failed to suppress the testimony of Mary Ann Franco, the assistant executive director at the Wolcott Organization from 1995 to 1997, and a check in the amount of $7225 payable to Franco. The defendant claims that because Franco subsequently invoked her fifth amendment privilege against self-incrimination while testifying, the defendant was denied her sixth amendment right to confront the witnesses against her and to present a defense. We decline to review this claim.

The trial court's lengthy and thorough memorandum of decision provides in relevant part: "The court finds the check, state's exhibit forty-eight, in the amount of seven thousand two hundred twenty-five dollars, was written at the direction of [the defendant] on December 12, 1995, by Mary Ann Franco, and thereafter cashed by Ms. Franco. The cash proceeds of the check were then delivered to [the defendant] in accordance with her instructions. The payment of seven thousand two hundred twenty-five dollars to [the defendant] was not intended to be a repayment of any previous loans which she may have made to [the Wolcott Organization]. The moneys which [the defendant] appropriated to herself were funds belonging to [the Wolcott Organization], which [the defendant] as the executive director was entrusted with protecting. Thereafter, in the months that followed the December 12, 1995 transaction, [the defendant] gave various conflicting explanations of what had occurred. During the course of the trial, [the

defendant] provided testimony concerning the check which the court finds not to be credible."

The record reveals that Franco was called to the witness stand to identify the state's exhibit and to testify that she signed it for the defendant, cashed it and delivered the proceeds to the defendant. During Franco's lengthy cross-examination testimony, it appeared that she could be exposed to criminal liability herself. As a result, the witness was referred to a public defender. The defense, however, wanted to call Franco as a defense witness.

At a hearing to determine whether Franco should be allowed to invoke her fifth amendment rights, Franco invoked her privilege in response to defense counsel's questioning as to who would write checks at the Wolcott Organization, whether she cashed other checks for the defendant and whether she signed other checks for the defendant, among other things. Before issuing its ruling, the court inquired of the defendant whether she intended to file a motion to strike any or all of Franco's testimony. The defendant stated that she did not and further agreed that a redacted transcript could be submitted to the court.[7] The court ordered counsel to agree

[7] The following colloquy occurred between the court and counsel:

"[Assistant State's Attorney]: . . . I would urge the court to take the latter course. And that would be not to preclude Ms. Franco's testimony in its entirety, but to [provide a redacted transcript to the court].

"The Court: Thank you. [Defense Counsel]?

"[Defense Counsel]: Yes, Your Honor, it would be my position with regard to this that the witness has been given the opportunity and has elected to assert [her] privilege of fifth amendment. . . . I take no issue with regards to that based on what we've heard here today.

"What I do take issue with, Your Honor, is partly the way that this matter comes before the court. . . . I am not suggesting that the privilege be asserted in front of the trier of fact . . . .

"The problems that I think we now have with regards to it—and I'm not asking the court to strike Ms. Franco's testimony either in [the state's] case-in-chief or what she's testified to here today—should that be the election of the court.

"What I am concerned about, Your Honor, is that she's called as a state's witness, the state elicits the testimony that they need. . . . Now we have

to a redacted transcript and to submit it to the trial judge. The parties complied without objection.[8]

her as my witness in chief. All of a sudden, now we have the fifth amendment privilege being asserted as it goes directly to how she used the money. . . . I think [the defendant] has been prevented from asking and going through those questions by the fifth amendment assertion. I think that's essential and I think it prejudices her ability fully to defend herself in this particular case. . . . [M]y motion would be that this constitutes grounds for a mistrial as opposed to just striking the testimony. . . .

"The Court: You understand the sixth amendment right is not unfettered and that it is within the court's discretion to decide these issues?

"[Defense Counsel]: Yes, Your Honor.

"The Court: Your position is not that you would like any of the testimony stricken, correct? This is not a motion to strike?

"[Defense Counsel]: No, Your Honor.

"The Court: This is a motion for a mistrial?

"[Defense Counsel]: I think at this point in time, Your Honor . . . I'm not sure . . . .

"The Court: I just—I want to make absolutely certain that you are not now nor do you intend in the future to file a motion to strike all or any portion of the testimony of this witness aside from—well, with the understanding that any answers to any questions that might invoke the fifth amendment would not be part of this case.

\* \* \*

"[Defense Counsel]: Yes, Your Honor, we are not looking to strike—my feeling with regards to it, Your Honor, I think is—I am trying to articulate— maybe not as accurately as I would like, it's an all or nothing type of proposition. If the testimony is going to be in, the testimony is going to be in for both of us, we are stuck with the privilege, we live with the privilege, Your Honor.

"I am not addressing whether or not I think that the appropriate remedy is redacted transcript or whether or not the appropriate remedy—because I think there [are] problems with using it as a transcript in a criminal trial where the trier of fact does not have the opportunity to truly assess the answers as they are coming across from the witness[es] themselves because the case law talks about that.

"As far as the motion to strike, Your Honor, no. We are not raising a motion to strike and we recognize that if it comes in, it should come in for both parties. . . .

"The Court: So you are going to file a brief in support of your motion for a mistrial?

"[Defense Counsel]: Yes, Your Honor."

The defendant thereafter filed a motion for a mistrial, which the court denied.

[8] Prior to the court issuing its decision, the defendant again stated: "And I leave it within the court's sound discretion to determine how best to

On appeal, the defendant now claims that she was denied her sixth amendment rights due to Franco's invocation of her fifth amendment privilege. In light of her failure to move to suppress the evidence or to strike Franco's testimony,[9] the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[10] We decline to review this claim because the defendant expressly waived her objection to the admission of Franco's redacted testimony by indicating to the court that no motion to strike would be filed and by deferring to the court's discretion. See *State* v. *Berube*, 256 Conn. 742, 747–49, 775 A.2d 966 (2001); *State* v. *Ledbetter*, 240 Conn. 317, 325, 692 A.2d 713 (1997) (most basic rights of criminal defendants are subject to waiver). We conclude that the defendant failed to preserve properly, and also actively waived, her right to our review of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

present testimony of Ms. Franco be it in terms of a redacted transcript or be it in terms of live testimony. That certainly is a question for your discretion, Your Honor."

[9] The defendant concedes on appeal that her motion for a mistrial sought an overbroad remedy. She asserts, however, that the motion preserved her sixth amendment claim. The defendant did not address the denial of her motion for a mistrial in her brief. We therefore decline to address this claim.

Moreover, a mistrial may be granted in the court's discretion when there is "substantial and irreparable prejudice to the defendant's case. . . ." Practice Book § 42-43. "If curative action less drastic [than a mistrial] is appropriate the court should take such action before terminating the trial." *State* v. *Altrui*, 188 Conn. 161, 173, 448 A.2d 837 (1982). The defendant's failure to move to strike the testimony undermines any claim that she was substantially and irreparably prejudiced.

[10] In *Golding*, our Supreme Court held: "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.