RIDGEFIELD BANK *v.* STONES TRAIL, LLC, ET AL.
(AC 26371)

DiPentima, Gruendel and Hennessy, Js.

Argued January 11—officially released May 9, 2006

*Robert A. Fuller,* for the appellant (named defendant).

*Matthew C. Mason,* for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. In this foreclosure action, the named defendant, Stones Trail, LLC,[1] challenges the order of

---

[1] The other defendant in the original action, John J. Walpuck, Jr., who executed the written guaranty to the plaintiff on behalf of Stones Trail, LLC,

the trial court confirming the sale of property it owned. The defendant claims that the court improperly confirmed the sale (1) without determining the value of the property as six lots and (2) without conducting an evidentiary hearing. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. In October, 1998, the defendant mortgaged property in Weston to the plaintiff, Ridgefield Bank, for $1,111,000. At that time, the deeds and maps recorded with respect to the nineteen acre property showed that it consisted of six lots with a private road. On February 11, 2002, due to several missed payments, the plaintiff initiated this foreclosure action. The court granted the plaintiff's motion for summary judgment as to liability on July 14, 2003.

An evidentiary hearing on the plaintiff's motion for judgment of foreclosure was held on January 5, 2004, during which the plaintiff's appraiser testified that in July, 2003, after speaking to various town officials and conducting a thorough evaluation, he determined that the property should be sold as one lot rather than six[2] and should be valued at $1.4 million. At the conclusion of the hearing, the court, *Comerford, J.*, rendered a

---

is not a party to this appeal. We therefore refer in this opinion to Stones Trail, LLC, as the defendant.

[2] The plaintiff's appraiser previously had appraised the property in 1998, in anticipation of the defendant's mortgage. At that time, the appraiser based his appraisal on six lots and valued the property at $2,530,000. The appraiser testified at the hearing on the motion for judgment of foreclosure that "[t]he highest and best use has changed since this original report of 1998. The original report of 1998 presupposes that there was a subdivision in place identifying six buildable lots. The subsequent appraisals have been based upon conversations with officials . . . . [B]ased on conversations with town officials, it was my opinion that the marketplace would interpret this property as one, nineteen acre parcel, not a subdivision."

judgment of foreclosure by sale,[3] finding the value of the property to be $1.4 million. On July 17, 2004, the sale date set by the court, the auction concluded with a successful bid of $1,270,001.

On July 21, 2004, the plaintiff filed a motion to confirm the sale, and the defendant filed an objection to the confirmation of sale on August 24, 2004, and a motion to open the judgment of foreclosure on September 8, 2004. On September 24, 2004, the court, *Hon. Richard J. Tobin*, judge trial referee, overruled the objection to the confirmation of sale without conducting a hearing. On November 8, 2004, Judge Tobin held a hearing on the motion to open the judgment of foreclosure and filed a memorandum of decision denying the motion on February 22, 2005. On March 14, 2005, the plaintiff's motion to confirm the sale was granted. This appeal followed.[4]

As a preliminary matter, we set forth the applicable standard of review. "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal

[3] There was no substantial discussion regarding whether the foreclosure should be by strict foreclosure because it was stipulated that the defendant had sufficient equity in the property to warrant a foreclosure by sale.

[4] The defendant originally had appealed from the judgment of foreclosure by sale, the denial of the motion to open the judgment and the confirmation of sale. On March 24, 2005, the plaintiff filed a motion to dismiss the appeal as untimely and frivolous. On June 22, 2005, this court granted the motion to dismiss as to all claims challenging the judgment of foreclosure by sale and the denial of the motion to open. As a result, this appeal addresses only the order confirming the sale.

quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen,* 88 Conn. App. 806, 811–12, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005). "The trial court in a foreclosure matter acts as a court of equity and has full authority to refuse to confirm a sale on equitable grounds where an unfairness has taken place or where the price bid was inadequate. . . . The court must exercise its discretion and equitable powers with fairness not only to the foreclosing mortgagee, but also to subsequent encumbrancers and the owners." (Citations omitted.) *Dime Savings Bank of New York* v. *Grisel,* 36 Conn. App. 313, 318–19, 650 A.2d 1246 (1994).

I

The defendant first argues that the court improperly confirmed the sale without determining the value of the property as six separate lots. Specifically, the defendant claims that because the deeds and map in the land records, as well as the plaintiff's complaint, described the property as six lots, the court improperly confirmed the foreclosure sale on the basis of the value given by the plaintiff's appraiser as only one lot. We disagree.

"We will disturb the trial court's determination of valuation . . . only when it appears on the record before us that the court misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Bank of Southeastern Connecticut* v. *Nazarko Realty Group,* 49 Conn. App. 452, 457, 714 A.2d 722 (1998). The elements of a judgment of foreclosure by sale are mandated by General Statutes § 49-25,[5]

---

[5] General Statutes § 49-25 provides in relevant part: "When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint one disinterested appraiser who shall, under oath, appraise the property to be sold and make return of the appraisal to the clerk of the court. Upon motion of the owner

which requires, inter alia, that the court appoint "one disinterested appraiser who shall, under oath, appraise the property to be sold and make return of the appraisal to the clerk of the court. Upon motion of the owner of the equity of redemption, the court shall appoint a second appraiser in its decree. . . ." The purpose of the appraisal is "to give the court a basis from which to determine the fairness of the highest bid. . . . Because the trial court has control of the foreclosure proceedings, it can, in the exercise of its discretion, accept or reject a proposed sale." (Citation omitted; internal quotation marks omitted.) *Danbury Savings & Loan Assn., Inc.* v. *Hovi*, 20 Conn. App. 638, 641–42, 569 A.2d 1143 (1990).[6]

The defendant bases its contention on the fact that it purchased the property with the understanding that the property consisted of six lots, which is supported by the recorded map of the property, the description in the deeds and the description of the property in the plaintiff's complaint. The plaintiff's certified appraiser, however, valued the property at $1.4 million as the highest and best use of the single nineteen acre parcel on the basis of discussions with various town officials and an extensive evaluation. Despite the defendant's cross-examination of the appraiser and testimony by the defendant's own three witnesses, the court found that the fair market value was $1.4 million.[7]

of the equity of redemption, the court shall appoint a second appraiser in its decree. . . ."

[6] Although "[i]t is generally recognized that the grounds which would warrant a court's refusal to approve a sale are fraud, misrepresentation, surprise or mistake"; (internal quotation marks omitted) *First National Bank of Chicago* v. *Maynard*, 75 Conn. App. 355, 361, 815 A.2d 1244, cert. denied, 263 Conn. 914, 821 A.2d 768 (2003); none existed in this case.

[7] The court stated: "I don't say that I don't have sympathy for the developers here; I do. There is certainly no indication that they were acting in anything but good faith. They probably thought they were buying six lots.

"I don't know exactly what the recourse is, and I don't suggest that any recourse is appropriate, but certainly I don't see that an argument has been made in terms of value here, that would disclose anything other than what

The defendant did not file a motion for the appointment of a second appraiser, as permitted pursuant to § 49-25, nor did it file a motion to open or set aside the judgment within four months of the judgment of foreclosure by sale, pursuant to General Statutes § 52-212a.[8] The court offered a reasoned decision as to why it valued the property as it did, and it is apparent that the defendant now is attempting to relitigate the issue after the time to appeal has expired. Having missed the opportunity, the defendant cannot prevail on its objection to the confirmation of the sale by claiming that the court should have valued the property differently. Accordingly, the court did not abuse its discretion, and the defendant's claim fails.

## II

The defendant further claims that the court improperly confirmed the foreclosure by sale without conducting an evidentiary hearing. Specifically, the defendant argues that the court should have accorded the defendant fundamental fairness and due process by conducting an evidentiary hearing to determine the value of the property as six lots. We disagree.

We begin by noting that "[d]ue process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. . . . The [due process clause] in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before

[the plaintiff's appraiser] testified to, that the fair market value as of today's date is $1.4 million."

[8] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

the issues are decided. . . . Moreover, there is no violation of due process when a party in interest is given the opportunity of a meaningful time for a court hearing to litigate the question . . . ." (Citation omitted; internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Hintlian,* 241 Conn. 269, 273–74, 696 A.2d 315 (1997).

The defendant cites *Northeast Savings, F.A.* v. *Hintlian,* supra, 241 Conn. 269, for the proposition that § 49-25 requires an evidentiary hearing. *Northeast Savings, F.A.,* involved a mortgagor's challenge to the constitutionality of § 49-25 in a foreclosure by sale proceeding. The defendants claimed that § 49-25 was unconstitutional, asserting that it does not afford the right to a "meaningful opportunity to be heard regarding the valuation of the property because the statute fails to provide for an evidentiary hearing at which they may challenge the appraisal, either through examination of the appraiser or by the introduction of other evidence regarding the value of the property, or both." Id., 275. Our Supreme Court disagreed, affirming that "prior to the court's action on the plaintiff's motion to approve the sale, the defendants are entitled to the opportunity to present evidence challenging the appraiser's valuation of the property." Id., 277; see also *New England Savings Bank* v. *Lopez,* 227 Conn. 270, 282, 630 A.2d 1010 (1993) ("[o]ur foreclosure statutes permit a mortgagor to be heard regarding the determination of whether there should be a foreclosure by sale and, if so, whether the sale should be confirmed").

Although the facts of *Northeast Savings, F.A.,* are significantly distinct from those in this case, the language is apposite. The court in *Northeast Savings, F.A.,* specifically held that "[b]ecause fundamental fairness requires that [an evidentiary] hearing be allowed *upon a proper request,* we conclude that a foreclosure court necessarily has the inherent, equitable power under § 49-25 to grant such a request." (Emphasis added.) *Northeast Savings, F.A.* v. *Hintlian,* supra, 241 Conn.

277–78. The defendant in this case did not request an evidentiary hearing properly.[9] In its objection to the confirmation of sale, the defendant made no request for an evidentiary hearing, nor did it file any motion for a second appraisal pursuant to § 49-25. In addition, on the short calendar claim form for the objection, the defendant requested only oral argument and not testimony.[10] In rejecting the due process claim, we further note that there was an evidentiary hearing on the motion for judgment of foreclosure that addressed the issue of whether the property consisted of six lots or one lot. See part I. Accordingly, the court did not abuse its discretion by overruling the defendant's objection without an evidentiary hearing, and the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The closest the defendant came to requesting an evidentiary hearing and an appraisal is in the last line of its two page objection to the confirmation of sale, which asked the court "to reject the proposed sale, and to postpone another sale of the property for a period of ninety days or [until] further order of the court for the defendant to establish that the property consists of six lots, and to obtain another appraisal of the property based on its value as six lots."

[10] The defendant also refers to a statement made by the court during the evidentiary hearing on the plaintiff's motion for judgment of foreclosure that the defendant claims entitles it to an evidentiary hearing. After the court set the date of sale for July 17, 2004, which was more than six months from the hearing date in order to allow sufficient time to market the property, the following exchange occurred between the defendant's attorney and the court:

"[The Defendant's Counsel]: I want it to be clearly understood that I did confer with my client and offer the six months, and it doesn't foreclose us from appearing here to proceed upon a motion to reopen.

"The Court: Exactly, you can come back. Everything depends on the market, the equity in the property, whether it's prejudice to the bank in terms of giving you additional time. Certainly, if there is enough equity in the property and you're proceeding in good faith, then everyone is protected. I don't see why we wouldn't consider whatever *appropriate motion* may be filed in the case." (Emphasis added.)

Because, as we have noted previously, the defendant did not file an appropriate motion or request an evidentiary hearing properly, this argument has no merit.