******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

MICHAEL DEROSE *v.* JASON ROBERT'S, INC., ET AL.
(AC 40715)

Keller, Prescott and Harper, Js.

*Syllabus*

The plaintiff sought to confirm an arbitration award in favor of the defendants, who filed a motion to vacate the award, which was issued in connection with an employment dispute and the defendants' alleged breach of a licensed dealer agreement between the parties regarding the defendants' concrete business. The trial court granted the plaintiff's application to confirm the award, denied the defendants' motion to vacate the award and rendered judgment thereon, from which the defendants appealed to this court. *Held*:

1. The defendants could not prevail on their claim that the trial court improperly found that the arbitrator effectively had defaulted them for their failure to appear at the final arbitration hearing, which they claim caused the court to fail to consider the merits of their challenges to the arbitration award: the arbitrator expressly found in the award that he had continued the final arbitration hearing to allow the defendants additional time to submit a rebuttal to the plaintiff's case and to present additional witnesses and that the final hearing proceeded even though the defendants did not submit their rebuttal or attend the hearing, which suggested that the arbitrator to some degree had relied on the plaintiff's unrebutted arguments as a result of the defendants' absence, and the trial court's finding that the arbitrator effectively had defaulted the defendants was supported by the evidence in the record and was not clearly erroneous; moreover, even if the trial court erred in finding that the defendants effectively had been defaulted, the defendants failed to establish that that finding affected the court's consideration of their claim on the merits.

2. The defendants could not prevail on their claim that the trial court improperly ruled on their motion to vacate the arbitration award without first providing them with an evidentiary hearing: the defendants failed to cite any authority mandating that the court hold an evidentiary hearing prior to ruling on the motion to vacate the arbitration award, in the absence of an express statute or rule of practice requiring it, the determination of whether to hold an evidentiary hearing is within the discretion of the trial court, the relevant statute (§ 52-420 [a]) requires that any motion to vacate be heard in the manner provided by law for written motions at a short calendar session, and a party seeking a hearing on a short calendar motion generally must make that request on the short calendar claim form or by motion, which the defendants here failed to do; moreover, the defendants' claim to the contrary notwithstanding, the defendants were in fact afforded an evidentiary hearing, as the record showed that, although the court initially denied their motion without hearing evidence, it immediately reopened the proceedings after the defendants requested an opportunity for an evidentiary hearing, allowed them to create an evidentiary record by admitting into evidence four exhibits that they proffered, and permitted them to make additional legal arguments.

3. The defendants' claim that the trial court improperly granted the arbitrator's motion to quash a subpoena duces tecum, which sought to compel the arbitrator to testify and to produce his arbitration file, was not reviewable, that claim having been inadequately briefed; although the defendants' brief cited to cases for the proposition that an arbitrator may be required to testify at a hearing on a motion to vacate an arbitration award, the defendants did not provide any analysis as to how they were harmed by the granting of the motion to quash or how precluding the arbitrator's testimony constituted an abuse of discretion, especially given that the court nonetheless admitted into evidence certain correspondence between the parties and the arbitrator at the defendants' request.

4. The defendants could not prevail on their claim that the trial court erred in confirming the arbitration award because the arbitrator failed to address the entirety of the arbitration submission, which was based on

their claim that the arbitrator ignored their special defenses, set-offs and counterclaim in issuing the award; although the submission was extremely broad and encompassed the defendants' special defenses, set-offs and counterclaim, and the arbitration award contained no express findings or conclusions specific to those pleadings, the defendants failed to establish that the arbitrator did not consider or decide the special defenses, set-offs and counterclaim, rather than tacitly considering and rejecting them prior to determining damages, particularly given that the defendants took no steps before the arbitrator to determine whether he had considered the entirety of the submission and presented no evidence to the trial court as to what they submitted to the arbitrator other than the pleadings in support of their special defenses, set-offs and counterclaim.

5. The trial court properly denied the defendants' motion to vacate the arbitration award on public policy grounds, which award was issued fourteen years after the parties' dispute initially arose and four years after arbitration commenced; although courts have described arbitration as an efficient system of alternative dispute resolution and the general policy favoring arbitration encompasses the concomitant policy that arbitrations proceed expeditiously, the attribution of promptness is aspirational and does not create an explicit, well-defined and dominant public policy that mandates that arbitrations be completed within a strict designated time period, and the award here did not violate a public policy of expedience as embodied by the doctrine of laches, as that doctrine is largely governed by the circumstances of the particular case and, therefore, is left to the discretion of the trial court, the defendants were unable to produce any case law in which a court vacated an arbitration award as violative of public policy because the arbitration was not completed in an expeditious manner, and even if the award here had violated a public policy of expedience in arbitration matters, the arbitrator expressly found that it was the defendants who had caused the delay in the arbitration proceedings.

6. The defendants' claim that the arbitrator's award should be vacated pursuant to statute (§ 52-418 [a] [4]) because it constituted a manifest disregard of the law was unavailing; the defendants having failed to meet their burden of demonstrating that the arbitrator ignored clearly applicable governing law or that the claimed manifest disregard of the law was anything more than their mere disagreement with the arbitrator's interpretation and application of established legal principles, it was unnecessary for this court to reach the merits of the defendants' claim.

Argued January 31—officially released August 13, 2019

*Procedural History*

Application to confirm an arbitration award, brought to the Superior Court in the judicial district of Ansonia-Milford, where the defendants filed a motion to vacate the award; thereafter, the matter was tried to the court, *Hon. Arthur A. Hiller*, judge trial referee; judgment granting the application to confirm and denying the motion to vacate, from which the defendants appealed to this court; subsequently, the court issued an articulation of its decision. *Affirmed*.

*Lori Welch-Rubin*, for the appellants (defendants).

*Thomas J. Weihing*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendants, Jason Robert's, Inc., and Robert D. Hartmann, Sr., appeal from the judgment of the trial court denying their motion to vacate an arbitration award and granting an application to confirm the award filed by the plaintiff, Michael DeRose. On appeal, the defendants claim that the court improperly (1) found that the arbitrator effectively had defaulted the defendants for failing to appear at the final arbitration hearing, and that this allegedly erroneous factual finding colored the court's decision-making process with respect to the motion to vacate; (2) failed to provide the defendants with an evidentiary hearing before ruling on the motion to vacate; (3) granted a motion to quash a subpoena duces tecum directed at the arbitrator and his files; (4) failed to vacate the arbitration award on the ground that the arbitrator had not addressed the entirety of the submission; (5) confirmed an award that violated public policy; and (6) confirmed an award made in manifest disregard of the law in violation of General Statutes § 52-418 (a) (4).[1] We disagree and, accordingly, affirm the judgment of the trial court.

The facts underlying the parties' long-standing dispute are set forth in our decision in *Jason Robert's, Inc.* v. *Administrator, Unemployment Compensation Act*, 127 Conn. App. 780, 782–85, 15 A.3d 1145 (2011). Additional facts and procedural history are set forth in the arbitrator's award and in the trial court's oral decision and subsequent articulation. "[Jason Robert's, Inc.,] is a concrete business. During the years 1998, 1999 and 2000, [it] employed [DeRose] as a concrete artisan. While [DeRose] was working for [Jason Robert's, Inc.] as an employee, he asked for a raise in salary. In order to give [DeRose] the potential to earn more money, [Jason Robert's, Inc.,] directed [DeRose] to set up a business so that he could enter into an agreement with [it] as a licensed dealer. In or about 2001, after [DeRose] had set up his own business, [Jason Robert's, Inc.,] presented him with a licensed dealer authorization (agreement), and, on May 4, 2001, [DeRose] signed the agreement and became a licensed dealer for [Jason Robert's, Inc.]

* * *

"[DeRose] was a licensed dealer of [Jason Robert's, Inc.,] during the years 2001 and 2002. During those years, [Jason Robert's, Inc.,] classified [DeRose] as an independent contractor. At the end of 2002, [DeRose] terminated the agreement because the arrangement had become unprofitable for him. After terminating the agreement, [DeRose] filed a claim for benefits under the Unemployment Compensation Act (act), General Statutes § 31-222 et seq. This claim for benefits caused . . . the administrator of the act [administrator] to

issue a missing wage assignment. . . . On April 25, 2003 . . . [a field auditor of the employment security division of the state department of labor] issued [a] written report, wherein he concluded that [DeRose] was an employee [of Jason Robert's, Inc.,] during the years 2001 and 2002. In a letter dated April 29, 2003, the [administrator] informed [Jason Robert's, Inc.,] of this determination and that there would be an assessment for the contributions due in the amount of $4366.03 plus interest. On May 16, 2003, [Jason Robert's, Inc.,] appealed this determination to the appeals division . . . . On September 12, 2007 . . . the appeals referee affirmed the determination. In its decision, the appeals referee applied § 31-222 (a) (1) (B) (ii), more commonly known as the 'ABC test,' . . . and concluded that [DeRose] was an employee of [Jason Robert's, Inc.] The referee reached this conclusion after having determined that [Jason Robert's, Inc.,] failed to satisfy any of the three prongs of the ABC test." (Footnote omitted.) Id., 782–84.

Both the Worker's Compensation Review Board (board) and the Superior Court subsequently affirmed the decision of the appeals referee. Id., 784–85. Jason Robert's, Inc., then appealed to this court claiming that, in determining whether DeRose was an employee, the board should have applied General Statutes § 42-133e (b), rather than the "ABC test" to the underlying facts. Id., 785. We disagreed and affirmed the judgment of the trial court. Id.

In 2007, during the pendency of the worker's compensation appeal, DeRose filed a civil action against the defendants.[2] The operative complaint contained seven counts in which DeRose alleged that the defendants (1) breached their agreement with him by failing to compensate him for various jobs, (2) breached the implied covenant of good faith and fair dealing, (3) made negligent misrepresentations, (4) made fraudulent misrepresentations, (5) violated several state labor statutes, (6) committed unfair trade practices, and (7) negligently inflicted emotional distress. In May, 2011, the defendants filed an amended answer to the complaint raising a number of special defenses.[3] Jason Robert's, Inc., also filed a counterclaim against DeRose, alleging that he had breached the parties' agreement by failing to complete work or utilizing poor workmanship, and committed statutory theft by retaining funds belonging to Jason Robert's, Inc.

On June 6, 2012, the parties entered into an agreement to resolve their civil action through binding arbitration. DeRose subsequently withdrew his civil action from the Superior Court. The arbitration agreement contains a clause titled "Submission to Arbitration and Scope of Arbitration," which states as follows: "The controversy shall be submitted to a panel of one arbitrator (Attorney Daniel Portanova), who shall hear, settle and determine

by arbitration the matters in controversy within the scope of the claim based upon the evidence and testimony presented. The arbitrator is permitted, but not required, to apply the rules of evidence in civil cases when considering the evidence presented. No party shall have the right or power to revoke the submission without the written consent of the other party except on the grounds as exist in law or equity for the rescission or revocation of any contract. All issues shall be submitted to and fully and finally adjudicated by the arbitrator including, but not limited to, the issue of coverage, liability, causation and damages. The arbitrator will apply the procedural and substantive law of Connecticut."

The arbitrator held hearings between July 1, 2012, and January 24, 2013, during which the parties submitted evidence, including testimony from DeRose and Hartmann. A period of inactivity then followed. By letter dated September 25, 2014, the arbitrator notified the parties as follows: "Please be advised that I am holding [$2,100] in my trustee account regarding the above arbitration. I have attached my invoice showing that each respective party has paid [$4,500]; therefore, each party is owed a refund of [$1,050]."

DeRose sent the arbitrator a letter dated May 15, 2015, attached to which were additional documents that DeRose sought to file with the arbitrator "with the intention to restart the . . . arbitration matter." A copy of that letter and its attachments were also sent to the defendants' counsel. The defendants responded to DeRose by letter dated May 19, 2015. The defendants indicated that, because the last arbitration hearing had taken place on January 24, 2013, and DeRose, until he sent the May 15, 2015 letter, had not complied with the arbitrator's request "to submit everything," they considered the arbitration abandoned.[4] DeRose replied to the defendants by letter dated June 1, 2015. In the letter, he stated that the arbitration proceedings had never been closed, he had not abandoned the matter, and he intended to proceed to a final decision. He indicated that he had no more testimony or evidence to present and that, if the defendants failed to participate going forward, they did so at their own peril. A few days later, on June 4, 2015, DeRose sent a letter to the arbitrator stating: "It has come to my attention that [counsel for the defendants] will not file any more documents or bring any witnesses into arbitration. We therefore respectfully request that you declare the arbitration closed and issue a decision in this matter."

The arbitrator next met with the parties in March, 2016. He later sent notice to the parties by letter dated April 1, 2016, stating: "I have reviewed the file since our meeting of last week. This file will remain open for further consideration." The parties and the arbitrator met again in June, 2016. By that time, Hartmann had

discharged the defendants' attorney and was proceeding as a self-represented party. Hartman made an oral motion to have the arbitration terminated, but the arbitrator denied the motion, continuing the matter until January 16, 2017.

Despite the arbitrator's decision that the arbitration would go forward, the defendants, who were now represented by their present counsel, sent DeRose a letter dated January 13, 2017, asserting that they intended to treat the arbitration as abandoned "by virtue of laches." The defendants did not attend the final January 16, 2017 arbitration hearing, despite having been duly served with subpoenas.

On February 1, 2017, the arbitrator issued a final award resolving the matter in favor of DeRose. Among other things, the arbitrator found that (1) DeRose was an employee of Jason Robert's, Inc., (2) DeRose never authorized the defendants to make deductions as was claimed by the defendants, and (3) Hartman was the individual who ultimately was responsible for the wage violations that had occurred. The arbitrator found that the defendants were liable to DeRose under General Statutes § 31-72,[5] and ordered them to pay DeRose damages, costs, and attorney's fees totaling $171,938.20.[6] Notice of the arbitrator's award issued on February 3, 2017.

On February 15, 2017, DeRose filed an application with the Superior Court for an order confirming the arbitration award. See General Statutes § 52-417.[7] On March 6, 2017, the defendants filed a motion to vacate the arbitration award pursuant to § 52-418. According to the defendants, the arbitrator's award violated clear public policy, as embodied in the equitable doctrine of laches, and contravened one or more of the statutory proscriptions set forth in § 52-418. The defendants also filed an objection to DeRose's application to confirm the arbitration award raising these same arguments. DeRose filed an objection to the motion to vacate the arbitration award, arguing that no legally cognizable reason existed to vacate the award.

The defendants served a subpoena duces tecum on the arbitrator ordering him to appear in court on July 17, 2017, and to produce the entire arbitration file maintained by him in his capacity as arbitrator. The arbitrator filed a motion to quash the subpoena, arguing that the contents of the arbitration file, which included his research and personal notes, were not relevant to any of the theories the defendants had advanced in support of their motion to vacate the arbitration award.

The parties argued the motion to quash before the court on July 17, 2017. After hearing from the parties, the court granted the arbitrator's motion to quash the subpoena. The court also denied the defendants' motion to vacate the arbitration award and granted the applica-

tion to confirm the award. The court explained as follows on the record: "The court has heard the arguments. The court has read all the papers in this file that have been filed. The court will grant the motion to quash the subpoena. The court will find that any delay in this arbitration was caused because the arbitrator gave the defendants extra time to present their case. The court finds no prejudice. The court finds that any delay [that] may have occurred did not cause any prejudice to the defendants and that the delay, if anything, was to their benefit. . . .

"The defendants were apprised of the final hearing date, and . . . Hartmann, both in his corporate and his personal capacity, [was] served by subpoenas on January 11, 2017. Hartmann and Jason Robert's, Inc., were in effect defaulted and failed to appear at the hearing. And as a result of their failure to appear at the hearing, Hartmann did not have another attorney filing an appearance on his behalf and he did not ask for a continuance and had a letter sent that the defendants were not coming to the hearing. . . . Hartmann, once again, did not appear at the final hearing, nor did any attorney representing him, and the arbitrator went forward after finding the defendants had notice of the hearing. The defendants have provided no valid reason that the arbitrator's decision should be vacated, and the [application] to confirm is granted."

The defendants immediately objected to the court having ruled without first affording them an evidentiary hearing at which, they assert, they would have called the arbitrator to testify[8] and would have offered additional documentary evidence. The court indicated that it would not allow the defendants to call the arbitrator to testify because "what [they were] asking for is irrelevant and improper." The court nevertheless agreed to open and reconsider its ruling and allowed the defendants an opportunity to make additional legal arguments and offer whatever documentary evidence that they believed supported their position that the award should be vacated. The defendants offered four documents, which were admitted into evidence as full exhibits, and made additional legal arguments with respect to those exhibits.[9] The defendants requested time to submit additional written briefs addressing the motion to quash and the motion to vacate the arbitration award, but the court indicated that briefs already had been filed and that it had heard enough. The court ordered that its prior rulings granting the motion to quash, denying the motion to vacate, and confirming the arbitration award would stand. This appeal followed.

On September 7, 2017, the defendants filed a motion for articulation pursuant to Practice Book § 66-5. DeRose filed an objection to the motion on November 1, 2017. The court, on November 21, 2017, granted in part the defendants' motion and articulated its decision

further. Specifically, the court responded to the defendants' request that the court articulate the basis for its denial of their motion to vacate the arbitration award on the grounds that the award violated public policy and § 52-418 (a) (4). The court first indicated that the arbitration agreement at issue was unrestricted, that both parties had acknowledged this fact in their respective pleadings, and that this severely limited the bases on which the court could set aside the award.[10]

With respect to the defendants' public policy argument, which was premised on the theory that recovery by DeRose in the arbitration was barred by laches, the court concluded that because "the delay at issue was the fault of the defendants, the doctrine of laches did not apply to the [present] matter." With respect to whether the award violated § 52-418 (a) (4) because the arbitrator allegedly had disregarded the procedural and substantive law of Connecticut, the court indicated that the defendants' claim, in essence, simply asserted that the arbitrator misapplied the law rather than acted with "manifest disregard of the law" in violation of § 52-418 (a) (4). The court denied the defendants' motion to vacate the award because they improperly "sought to retry the factual and legal determinations made by the arbitrator pursuant to a valid and unrestricted arbitration agreement."[11]

Before turning to our discussion of the specific claims raised by the defendants, we first set forth the very limited nature of judicial review regarding arbitration awards. "A party's choice to accept arbitration entails a trade-off. A party can gain a quicker, less structured way of resolving disputes; and it may also gain the benefit of submitting its quarrels to a specialized arbiter . . . . Parties lose something, too: the right to seek redress from the courts for all but the most exceptional errors at arbitration." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 478–79, 899 A.2d 523 (2006). "The propriety of arbitration awards often turns on the unique standard of review and legal principles applied to decisions rendered in this forum. [Thus, judicial] review of arbitral decisions is narrowly confined. . . . Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . .

"[U]nder an unrestricted submission, the [arbitrator's] decision is considered final and binding; thus the courts will not review the evidence considered by the [arbitrator] nor will they review the award for errors of law or fact. . . . A submission is deemed restricted only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review."

(Internal quotation marks omitted.) *Board of Education* v. *New Milford Education Assn.*, 331 Conn. 524, 531, 205 A.3d 552 (2019).

"[Because] the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it . . . . [Our Supreme Court has] . . . recognized three grounds for vacating an [arbitrator's] award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citation omitted; internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 474. With these principles in mind, we now turn to the defendants' claims on appeal.

I

The defendants first claim that the court improperly found that the arbitrator effectively had defaulted the defendants for failing to appear at the final arbitration hearing. According to the defendants, this alleged erroneous factual finding "clouded [the court's] judgment when reviewing the many claims of error that formed the basis of the defendants' . . . motion to vacate." In other words, the defendants contend that, because the court found that the arbitrator's award amounted to a default judgment against the defendants in favor of DeRose, the court necessarily failed to consider properly the merits of the defendants' challenges to the arbitrator's award. We are not persuaded.

As the defendants recognize in their appellate brief, a "trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous [if] there is no evidence in the record to support it . . . or [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Lussier* v. *Spinnato*, 69 Conn. App. 136, 141, 794 A.2d 1008, cert. denied, 261 Conn. 910, 806 A.2d 49 (2002).

In the award, the arbitrator expressly found that he had continued the arbitration proceedings to allow the defendants an opportunity to finish their rebuttal of DeRose's case and to present additional witnesses, but that the defendants failed to appear for the final arbitration hearing in defiance of duly served subpoenas. The arbitrator elected to proceed with the arbitration proceedings despite the defendants' absence. Although the arbitrator does not describe his award as a default judg-

ment, he notes as part of his findings that DeRose previously had submitted an exhibit summarizing all of the issues under submission and that the defendants had never provided a rebuttal to this summary. Because this suggests that the defendants' absence from the final hearing resulted in the arbitrator's reliance, at least in part, on the unrebutted arguments of DeRose, it is certainly a plausible inference for the trial court to have found that, as a result of the defendants' failure to appear at the final hearing, the defendants "were *in effect* defaulted" by the arbitrator. (Emphasis added.) The court's finding regarding the perceived effect of the defendant's absence, therefore, cannot be viewed as clearly erroneous because, as indicated, there is some evidence in the record to support such a characterization.

Moreover, even if we agreed with the defendants that the court mischaracterized them as having been "in effect defaulted," the defendants have not directed us to any portion of the court's decision, or anywhere in the record, that would support their assertion that this finding affected the court's consideration of the defendants' motion to vacate in any way deleterious to the defendants. The court never indicated, for instance, that it would not consider the substance of the motion to vacate because the defendants had been defaulted by the arbitrator. Instead, the court found, on the basis of its review of the record presented, that the defendants had failed to provide a valid reason to vacate the award, implying that the court fairly considered the defendants' arguments on their merits and rejected them. Accordingly, we are not persuaded by this claim.

II

The defendants also claim that the court improperly failed to provide them with an evidentiary hearing before ruling on their motion to vacate the arbitration award. This claim is belied by the transcript of the hearing and is, thus, without merit.

"We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Nguyen*, 253 Conn. 639, 653, 756 A.2d 833 (2000). "Under this standard of review, [w]e must make every reasonable presumption in favor of the trial court's action." (Internal quotation marks omitted.) *Metropolitan District Commission* v. *Connecticut Resources Recovery Authority*, 130 Conn. App. 132, 142, 22 A.3d 651 (2011).

The defendants have not cited to any statute, evidentiary rule, or rule of practice mandating that parties are entitled to an evidentiary hearing before a court rules on a motion to vacate an arbitration award. Furthermore,

General Statutes § 52-420 (a) provides in relevant part that "[a]ny application [to confirm, vacate or modify an award] under [§§] 52-417, 52-418 or 52-419 shall be heard in the manner provided by law for hearing written motions at a short calendar session, or otherwise as the court or judge may direct, in order to dispose of the case with the least possible delay." A party wishing to have an evidentiary hearing on a short calendar motion generally must make such a request on the short calendar claim form or by motion. See *Ridgefield Bank* v. *Stones Trail, LLC*, 95 Conn. App. 279, 287, 898 A.2d 816, cert. denied, 279 Conn. 910, 902 A.2d 1069 (2006). Unless there is an express statutory provision or rule of practice requiring an evidentiary hearing; see, e.g., General Statutes § 49-14 (a) (mandating motion for deficiency judgment "be placed on the short calendar for an evidentiary hearing"); which is absent here, whether to hold an evidentiary hearing in a particular case and the scope of such a hearing is left to the discretion of the court.

Although the court initially ruled on the defendants' motion to vacate after hearing arguments and ruling on the motion to quash, the record shows that, once the defendants requested an opportunity for an evidentiary hearing, the court agreed to open the proceedings for the purpose of reconsideration and to allow the defendants to make an evidentiary record. Although the court indicated, consistent with its ruling on the motion to quash, that it would not allow the defendants to call the arbitrator as a witness, the court admitted as full exhibits several documents that the defendants offered into evidence and permitted additional legal arguments. Accordingly, contrary to the defendants' claim, they were afforded an evidentiary hearing. To the extent that the defendants believe the court unfairly limited the scope of that hearing, the defendants have failed to brief any such claim on appeal except to challenge the ruling on the motion to quash, which we address in part III of this opinion. The defendants have not indicated what additional evidence they were precluded from presenting to the court or how it would have changed the outcome of the court's decision. Thus, they have failed even to attempt to demonstrate how they were harmed by the alleged error. On the basis of the record presented, we conclude that the defendants' claim that they were denied an evidentiary hearing is simply untenable.

### III

We next turn to the defendants' claim that the court improperly granted the arbitrator's motion to quash the subpoena duces tecum directed at him. We decline to review this claim because it is inadequately briefed.

"[A] trial court's decision to quash a subpoena is . . . reviewed on appeal under the abuse of discretion standard." (Internal quotation mark omitted.) *Cavolick*

v. *DeSimone*, 88 Conn. App. 638, 654, 870 A.2d 1147, cert. denied, 274 Conn. 906, 876 A.2d 1198 (2005). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Internal quotation marks omitted.) *Satchwell* v. *Commissioner of Correction*, 119 Conn. App. 614, 623–24, 988 A.2d 907, cert. denied, 296 Conn. 901, 991 A.2d 1103 (2010).

The subpoena duces tecum in the present case sought to compel the arbitrator's testimony and the production of the arbitrator's entire file, including but not limited to his legal research, personal notes, and correspondences with the parties.[12] The court granted the motion to quash the subpoena because it concluded that the contents of the arbitrator's file and his testimony were not relevant given the limited scope of the court's review of an arbitration award resulting from an unrestricted submission. The court later articulated that the defendants had not demonstrated a clear need for any additional evidence and that it was capable of deciding the motion to vacate on the basis of the record before it.

As previously indicated in part II of this opinion, even without the benefit of the subpoena, the defendants were able to admit into evidence certain correspondence between the parties and the arbitrator that were not part of the record and that they believed supported their arguments that the arbitration previously was abandoned by DeRose. Although the defendants cite to a few cases in their appellate brief supporting the general proposition that, under certain circumstances, it might be necessary for an arbitrator to testify at a hearing on a motion to vacate an award, they have failed adequately to analyze how the court abused its discretion by not allowing testimony in the present case or how they were harmed by the granting of the motion to quash. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006). We deem this claim abandoned due to inadequate briefing and, accordingly, decline to review it.

IV

The defendants next claim that the court improperly failed to vacate the arbitration award on the ground

that the arbitrator failed to address the entirety of the submission, which the defendants contend included their special defenses, set-offs, and counterclaim pleaded in the underlying civil action. We are not persuaded.

The scope of arbitration, including the delineation of the issues to be decided, is determined and limited by the parties' submission to arbitration. See *Board of Education* v. *AFSCME*, 195 Conn. 266, 271, 487 A.2d 553 (1985). "A submission to arbitration, sometimes referred to as an agreement for submission, is a contract . . . whereby two or more parties agree to settle their respective legal rights and duties by referring the disputed matters to a third party, by whose decision they agree to be bound. . . . Technical precision in making a submission is not required and submissions are given a liberal construction in furtherance of the policy of deciding disputes by arbitration and in light of the surrounding facts and circumstance. . . . A submission to arbitrate must embrace everything necessary to give the arbitrators jurisdiction over the parties and the matter in dispute . . . . Since the award is limited by the submission, the submission agreement should show clearly what disputes are to be arbitrated. However, it will be presumed that the parties intended to grant to the arbitrators such powers as are reasonably necessary to settle the dispute fully." (Citation omitted; internal quotation marks omitted.) *Alderman & Alderman* v. *Pollack*, 100 Conn. App. 80, 82–83, 917 A.2d 60 (2007).

In the present case, the submission provided that "[a]ll issues shall be submitted to and fully and finally adjudicated by the arbitrator including, but not limited to, the issues of coverage, liability, causation and damages." This submission is very broad, evincing the parties' intent that the submission encompass not only DeRose's causes of action against the defendants, but any special defenses and counterclaims raised by the defendants as a result. The defendants argue on appeal that the arbitrator "simply chose to ignore those claims in their entirety." Although we agree with the defendants that the arbitration award does not contain express findings or legal conclusions specifically addressing each special defense and counterclaim raised by the defendants, the defendants have failed to demonstrate that the arbitrator simply chose to ignore the special defenses and counterclaim, rather than having considered and rejected them, prior to awarding damages to DeRose.

Our standard of review requires that we make "every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Internal quotation marks omitted.) *Bridgeport* v. *Kasper Group, Inc.*, supra, 278 Conn. 474. The party challenging the award, in this case the defendants, bears the burden "of producing evidence sufficient to invalidate or avoid

it." Id. The defendants have failed to show beyond mere speculation that the arbitrator did not consider and fully resolve all issues properly submitted to him by the parties. The defendants do not argue on appeal that they were frustrated in doing so by the court's decision to quash the subpoena issued to the arbitrator. Moreover, they offered no other evidence before the trial court as to what evidence was submitted to the arbitrator on their counterclaim and set-off other than the pleadings. Finally, the defendants took no steps before the arbitrator after he had issued his award to ascertain whether the arbitrator had considered and decided all the defendants' special defenses, set-offs, and counterclaim. Stated another way, the defendants have failed to overcome the presumption that, by awarding damages to DeRose without awarding any express set-off or countervailing damages to the defendants, the arbitrator properly, yet tacitly, rejected any special defenses and counterclaim raised by the defendants. We conclude that the court properly rejected this claim as a basis for vacating the award.

V

The defendants next claim that the court improperly confirmed the award because the award violated public policy. The defendants identify two public policies potentially implicated by the award: the policy favoring arbitration as an efficient alternative to litigation and the equitable doctrine of laches. We are unconvinced that either provides a basis for vacating the arbitration award on the basis of "the stringent and narrow confines of the public policy exception." *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.*, 273 Conn. 634, 665, 872 A.2d 423, cert. denied sub nom. *Vertrue, Inc.* v. *MedValUSA Health Programs, Inc.*, 546 U.S. 960, 126 S. Ct. 479, 163 L. Ed. 2d 363 (2005).

"A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. . . . This rule is an exception to the general rule restricting judicial review of arbitral awards." (Citation omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 93, 919 A.2d 1002 (2007). "The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's*

*decision but with the lawfulness of enforcing the award.* . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's [award] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . .

"The party challenging the award bears the burden of proving that illegality or conflict with public policy is *clearly demonstrated.* . . . Therefore, given the narrow scope of the public policy limitation on arbitral authority, [a party] can prevail . . . only if it demonstrates that the [arbitrator's] award clearly violates an established public policy mandate." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *New England Health Care Employees Union*, 271 Conn. 127, 135–36, 855 A.2d 964 (2004). "[W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review." (Internal quotation marks omitted.) Id., 135.

In the present case, the defendants argue that the present arbitration was delayed for a number of years, and that a final award was not issued until more than fourteen years had passed since the parties' dispute initially arose. The defendants ask us to recognize that our oft-stated general policy favoring arbitration encompasses a concomitant policy that arbitrations proceed expeditiously, which the defendants contend did not happen here, as reflected by the record. It is true that courts in this state have often described arbitration as "an efficient and economical system of alternative dispute resolution"; (internal quotation marks omitted) *LaFrance* v. *Lodmell*, 322 Conn. 828, 851, 144 A.3d 373 (2016); and that arbitration is intended as a means to "secure prompt settlement of disputes . . . ." (Internal quotation marks omitted.) *State* v. *Philip Morris, Inc.*, 279 Conn. 785, 796, 905 A.2d 42 (2006). The attribution of promptness with respect to an arbitration proceeding, however, is aspirational in nature, and in no way creates a public policy that mandates that arbitrations be completed within a strict designated time period. Private arbitration, after all, is a creature of contract; id.; and all aspects are controlled by the parties through their arbitration agreement. If parties wish to have their disputes resolved through arbitration within a particular time frame, they are free to do so contractually. In describing the expeditious nature of arbitration relative to litigation, our courts have never intimated that a protracted arbitration proceeding risked being found violative of a clearly defined and

well established public policy.

The defendants similarly argue that the lengthy arbitration proceedings violate a public policy that they assert is embodied in the doctrine of laches. "Laches is purely an equitable doctrine, is largely governed by the circumstances, and is not to be imputed to one who has brought an action at law within the statutory period. . . . It is an equitable defense allowed at the discretion of the trial court in cases brought in equity." (Emphasis omitted; internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 282, 880 A.2d 985 (2005). Courts have recognized the defense of laches to preclude a plaintiff from pursuing equitable relief in the face of an inexcusable delay causing prejudice to the defendant. See *Caminis* v. *Troy*, 112 Conn. App. 546, 552, 963 A.2d 701 (2009), aff'd, 300 Conn. 297, 12 A.3d 984 (2011). But whether a delay violates the doctrine of laches is an issue left squarely to the discretion of the trial court, to be determined on the basis of the circumstances presented. Finally, it is important to note that the defendants have not directed us to any case in which a court vacated an arbitration award as violative of public policy because the arbitration was not completed in an expeditious manner.

We conclude that neither of the purported "public policies" advanced by the defendants rises to the type of explicit, well-defined, and dominant public policy that would render an arbitrator's award unenforceable under the narrow public policy exception. Moreover, even if the defendants were able to demonstrate the existence of a public policy that would subject an arbitration award to vacatur upon a finding that an inequitable delay in the arbitration process occurred, the defendants' claim nevertheless would fail in the present case because the arbitrator attributed the primary cause of any delays in the present case to the defendants. Although we engage in plenary review of whether an explicit, well-defined, and dominant public policy is implicated by an award, we nonetheless must give deference to the factual findings of the arbitrator. See *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 201, 947 A.2d 916 (2008). We conclude that the court properly rejected the defendants' claim that the award should be vacated on public policy grounds.

VI

Finally, the defendants claim that the court improperly confirmed the arbitration award because it violated § 52-418 (a) (4). Specifically, the defendants contend that the arbitrator's award was in "manifest disregard of the law" because the arbitrator (1) applied the improper legal test in finding that DeRose was an employee of the defendants, (2) ignored the legal definition of wages as set forth in General Statutes § 31-71a (3), and (3) improperly awarded attorney's fees pursuant to General Statutes § 31-72. We conclude that the defendants have

failed to demonstrate even a colorable claim that the award violates § 52-418 (a) (4).

As previously noted, § 52-418 (a) provides in relevant part that, "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds . . . (4) . . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Our Supreme Court has indicated that subdivision (4) of § 52-418 (a) is also "commonly referred to as 'manifest disregard of the law.'" *Kellogg* v. *Middlesex Mutual Assurance Co.*, 326 Conn. 638, 649, 165 A.3d 1228 (2017), citing *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992).[13] It is well settled, however, "that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles. . . . [T]hree elements . . . must be satisfied in order for a court to vacate an arbitration award on the ground that the [arbitrator] manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is [well-defined], explicit, and clearly applicable." (Citation omitted; internal quotation marks omitted.) *Kellogg* v. *Middlesex Mutual Assurance Co.*, supra, 649–50. We will not decide the merits of a claimed manifest disregard of the law if the proponent of an application to vacate an award cannot demonstrate "anything more than his disagreement with the [arbitrator's] interpretation and application of established legal principals." *Garrity* v. *McCaskey*, supra, 13.

Here, as in *Garrity*, it is unnecessary for us to reach the merits of this claim because the defendants have demonstrated nothing more than a disagreement with the arbitrator's interpretation and/or application of established legal principles. Id. "Such a contention is a far cry from the egregious or patently irrational misperformance of duty that must be shown in order to prove a manifest disregard of the law under § 52-418 (a) (4). Acceptance of [the defendants'] argument would turn every disagreement with an arbitrators' rulings of law [which generally are not subject to review by the courts] into an allegation of manifest disregard of the law. We have never construed § 52-418 (a) (4) so broadly and we decline to do so today." Id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been

procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.''

[2] DeRose first commenced a civil action against the defendants in 2005. The 2007 action was filed with reference to the accidental failure of suit statute, General Statutes § 52-592. It is not clear from the record, however, precisely how the 2005 action was disposed of or whether it was consolidated into the 2007 action, as was requested by Jason Robert's, Inc., in a motion to consolidate.

[3] The defendants raised by way of special defense accord and satisfaction, failure to mitigate damages, statute of limitations, res judicata, and collateral estoppel.

[4] Although the defendants state in their brief that nearly eight months passed between the time "the arbitrator had refunded his remaining retainer" and DeRose's May 15, 2015 letter, there is nothing in the record indicating whether the arbitrator ever issued a refund to the parties or whether the defendants sought any clarification or confirmation of whether the arbitrator deemed the arbitration proceedings closed or abandoned.

[5] General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of [General Statutes §§] 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with [General Statutes §] 31-76k . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. . . .''

[6] Specifically, the award consisted of $125,000 in damages, $45,000 in attorney's fees, and $1938.20 in costs.

[7] General Statutes § 52-417 provides in relevant part: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides . . . for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in [General Statutes §§] 52-418 and 52-419.''

[8] The defendants never made an offer of proof as to what testimony they intended to elicit from the arbitrator.

[9] The exhibits were (1) the May 15, 2015 letter from DeRose's attorney to the arbitrator, (2) the June 4, 2015 letter from DeRose's attorney to the arbitrator, (3) a May 25, 2016 e-mail from the defendants' former attorney, David Volman, notifying the arbitrator that he was no longer representing Jason Robert's, Inc., and (4) the May 4, 2001 licensing agreement between DeRose and Jason Robert's, Inc.

[10] Although counsel for the defendants argued at the July 17, 2017 hearing that the parties' submission was not unrestricted because it contained a clause requiring the arbitrator to apply the substantive and procedural laws of Connecticut, counsel was not able to provide the court with any legal authority supporting that proposition. A submission is unrestricted unless it contains language that expressly restricts the breadth of the issues to be decided, reserves explicit rights, or conditions the award on court review. See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 109, 779 A.2d 737 (2001). Because the defendants have not raised as a distinct claim on appeal that the trial court improperly determined that the parties' submission to arbitration was unrestricted, we view the award in this case as arising out of an unrestricted submission.

[11] The defendants filed a motion for review of the court's articulation pursuant to Practice Book § 66-7. This court granted the motion for review but denied the defendants' request to order the court to further articulate the basis for its decision.

[12] In addition to commanding the arbitrator to appear to testify at the July 17, 2017 hearing, the July 7, 2017 subpoena duces tecum commanded that the arbitrator "produce at that time and place the complete and entire arbitration file maintained by you in your capacity as arbitrator . . . includ-

ing but not limited to any and all written documents, such as personal notes, whether handwritten or typed made by [the arbitrator] after considering the testimony on hearing dates; all legal research conducted by [the arbitrator]; all correspondence from [the arbitrator] to the parties and their respective legal counsel, including letters, [e-mails] and the like; all submissions to [the arbitrator] from the parties or their respective legal counsel, including pleadings, correspondence, [e-mails], exhibits and the like; the billing records maintained by [the arbitrator]; [and] the return of the remaining retainers by [the arbitrator]."

[13] In *Garrity* v. *McCaskey*, supra, 223 Conn. 2, our Supreme Court considered whether an arbitrator's alleged "manifest disregard for the law" should be recognized under Connecticut law as an independent ground for vacating an arbitration award resulting from an unrestricted submission. The court reiterated that Connecticut recognized only three grounds for vacating such an award: "(1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted.) Id., 6. The first two grounds have their origins in our common law whereas the third ground is statutory in nature. Although our Supreme Court chose not to recognize manifest disregard for the law as an *independent* ground on which to seek vacatur of an arbitration award, the court held that such an argument was cognizable under the existing statutory ground set forth in § 52-418 (a) (4). Id., 7.

———————————————